Wood *v.* City of Brooklyn.

—•♦•—

Wood *vs.* The City of Brooklyn, Conklin Brush, mayor, and John S. Folk, chief of police, &c.

An ordinance, passed by a municipal corporation prohibiting the sale of spiritous liquors on Sunday, is void so far as relates to sales by innkeepers, to their lodgers and to lawful travelers, pursuant to their licenses, and an injunction will be granted, to prevent its enforcement against them.

An arrest cannot be made on Sunday, for a violation of a corporation ordinance.

In Equity. This was a motion to continue a preliminary injunction restraining the defendants from enforcing an ordinance of the common council of the city of Brooklyn. The facts appear in the opinion of the court.

S. B. Strong, J. I have refrained from deciding the motion to continue the preliminary injunction in this cause until now, in the hope that the common council of the city of Brooklyn would, by an amendment of their ordinance, which I suggested on the argument, render any further restriction upon its operation unnecessary. But no such amendment has been made, and the plaintiff calls upon me, as he has a right to do, to pronounce a decision without further delay.

The grounds of the motion which I deem it necessary to consider are, that the ordinance is void, and that its enforcement inflicts upon the plaintiff serious injuries to his business as an innkeeper, for which he can obtain no adequate redress in the law.

The ordinance in question is entitled, " A law to prevent the sale of certain commodities in the city of Brooklyn on Sundays," and consists of the three following sections :

" Sec. 1. No person shall expose to sale in said city, any wares, merchandise, fruit, herbs, goods or chattels on Sunday, except meats, milk and fish, which may be sold any time before nine of the clock in the morning, and not after that hour.

Sec. 2. No person shall sell or dispose of, any ale, porter strong or spirituous liquors, in said city, on Sunday.

Sec. 3. Every person offending against any provision of this ordinance, shall forfeit and pay the sum of fifty dollars for each and every offense."

It was approved by the mayor of the city on the 3d day of July, 1850. The plaintiff contends that the common council, in passing this ordinance, exceeded the power conferred upon that body by the act incorporating the city of Brooklyn, then in force. The act of April 4th, 1850, did not go into operation until the first of January, 1851, and the power to make ordinances at the time of the passage of the one in question had been delegated to the common council, by the act of February 19th, 1849. By the 16th section of the second title of that act, the city council was authorized to make, establish, alter, modify, amend and repeal all such ordinances, rules, police regulations and by-laws, *not contrary to the laws of this state*, or of the United States, as might be necessary to carry into effect the powers conferred

on it by the act, or by any other law of this state, "and such also as might be necessary and proper for the good government and order of the city and its inhabitants." It was not contended on the argument, nor could it well be, that the last clause of that section was not broad enough to authorize the passage of the ordinance in question, unless it conflict with the laws of this state or the United States; but it was insisted that it is contrary to the laws of this state, 1st, in violating the rights conferred upon innkeepers licensed pursuant to such laws, and 2d, in providing penalties for infractions of the laws of the state, in addition to those which they prescribe.

The second section of the ordinance prohibits the sale of strong or spirituous liquors *to any one, by any person,* on the Sabbath. The laws of the state provide, (1 *R. S.* 678, § 4,) that licenses may be granted to keepers of inns and taverns to sell strong and spirituous liquors and wines to be drank in their houses respectively. There is but one restriction to the privilege conferred by the license, and that is contained in the last section of the article relative to the observance of Sunday, (1 *R. S.* 676, § 72,) which is as follows: "No keeper of an inn or tavern, or of any ale house, or porter house, or grocery, nor any other persons authorized to retail strong or spirituous liquors, shall, on Sunday, sell or dispose of any ale, porter, strong or spirituous liquors, excepting to lodgers, in such inns or taverns, or to persons actually traveling on that day, in the cases allowed by law." Taking the two provisions together, and that is the proper way to consider them, licensed innkeepers are authorized to sell strong and spirituous liquors to be drank in their houses, without restriction, on week days, and to lodgers and lawful travelers on the Sabbath. Had the revised statutes simply prohibited the sale of spirituous liquors on Sunday to any but lodgers and lawful travelers, it might possibly have been competent for the common council under their general power to make police regulations, to extend the prohibition so as to make it total on that day. At any rate there would not have been a direct conflict. But the revised statutes, in this particular, are not simply prohibitory; they are also expressly permissive. They authorize the vendi-

tion on Sunday to certain lodgers and travelers. It needs no reasoning to show that two provisions, one permitting, and the other prohibing, the same act, are in direct conflict with each other. It was no doubt for this reason, that in the power given to the common council (in the 19th section of the second title) to regulate victualing-houses or cellars, gardens and other places, where ardent spirits or other intoxicating drinks may be sold, or given away, and to prohibit the keeping of the same, there is an express exception which prevents its application to " persons duly licensed."

But it has been contended that it is discretionary with commissioners of excise whether to grant licenses to innkeepers or not, and that in the exercise of that discretion they may impose terms in addition to those provided by the laws of the state, if not expressly, at least by limiting the license to a part only of the privileges mentioned in the statute. If a discretionary power to grant all or nothing would ordinarily permit the omission of a part only by implication, there is an express direction in both the act of 1849 and the act of 1850, relative to Brooklyn, that its commissioners of excise shall grant licenses to tavern keepers and grocers to sell wines and liquors *in the cases and in the manner*, but with the *qualifications* and restrictions authorized by law. Where there is a positive requisition, there is no room for implication—certainly not to the contrary.

I am satisfied that so much of the ordinance in question as in effect prohibits the sale of strong and spirituous liquors and wines by licensed innkeepers, to lodgers and lawful travelers on Sunday, is contrary to the laws of this state, and is therefore void. In other particulars, the ordinance prohibits only what are prohibited by the laws of the state ; and it has been made a question whether when a power, and particularly to pass penal provisions, has been exercised by the legislature, it has not been so far exhausted that nothing of it is left for any inferior body. That would undoubtedly be so, were the power a unit, and incapable of division. As to the power generally, that is, in its nature at least, as divisible as the subjects upon which it may

Wood *v.* City of Brooklyn.

operate; and the only question is whether its exercise by the superior, on a given subject, excludes similar action upon it by the inferior. The action of the legislature, so far as it can establish any general principle, proves that it does not. The act to incorporate the city of Brooklyn expressly authorizes the corporation to prohibit and impose penalties for various acts, rendered penal under the laws of the state; such as nuisances generally, horse racing, selling spirituous liquors by unlicensed persons, &c. There is undoubtedly good reason why city corporations should be authorized to impose penalties in addition to those inflicted by the laws of the state. Particular acts may be far more injurious, while the temptation to commit them may be much greater, in a crowded city than in the state generally. They consequently require more severe measures for prevention. State laws are of course for the general good, and cannot always answer the peculiar wants of particular localities. The power of making laws of general operation belongs exclusively to the legislature of the state; but local legislation may be delegated to municipal corporations. Their acts under the power are valid when there is no conflict, and superadded penalties are not inconsistent with those previously imposed. The cases which were cited on the argument confirm the position that the delegation of power in such cases is valid. It is not, however, necessary that I should decide this question, from the views which I entertain and intend to express, as to the character of the apprehended grievances against which a party is entitled to an injunction.

The plaintiff's papers contain a copy of his license, dated on the 21st day of June, 1852, which authorizes him to keep a tavern in the 11th ward of the city of Brooklyn, for one year from its date. For this the law required him to pay, and he no doubt has paid, a compensation to the city, and he has a vested right to the privileges which it confers, so long as it remains in force. One of the privileges for which he has thus paid is, to sell liquors to lodgers and travelers on Sunday. He alledges that it is valuable to him, and no doubt it is so. It is not, nor can it with propriety be made, the question, whether

the exercise of the privilege is beneficial to the community. The question is as to the legal rights of the plaintiff, and, if they have been invaded, the appropriate remedy. He complains that he is deterred from vending liquors to lodgers and travelers, and they from purchasing them from him, by the ordinance in question, and that he is thereby deprived of what would otherwise be his lawful earnings, which are requisite for the support of his family. These are undoubtedly the natural results from the ordinance in its present form. It is no answer to this to say (as is stated in the affidavits of the mayor and chief of police) that it has not been enforced to prevent innkeepers from selling according to their license. Attempts may be made at any time to enforce it as it reads, and the uncertainty whether it may be thus enforced creates the injury. The terms used were adopted by the common council, and if they comprehend too much, as they certainly do, the remedy is very easy; and if they will not adopt it, they cannot complain if they should be restrained, so that parties whose lawful rights might be invaded pursuant to its provisions, may know that they will be protected in the enjoyment of such rights. The damages which might otherwise result to the plaintiff could not be recovered by him, to their full extent, in any action, for the reason that from their nature they could not be satisfactorily proved; and besides it is questionable how far the corporation would be responsible if they are responsible at all, for the consequential damages resulting from an illegal ordinance. The plaintiff complains also, that the officers of the corporation, in their attempts to enforce the ordinance, arrest supposed offenders on the Sabbath, and imprison them until the next day, when they are subjected to an immediate trial without allowing them their constitutional privilege of a trial by jury.

The revised statutes prohibit the service on Sunday of any writ, process, warrant, order, judgment, decree, or other proceeding of any court or officer of justice, except in cases of breach of the peace, or for the apprehension of persons charged with crimes and misdemeanors, or the violation of any of the provisions of two articles, one entitled " of the disturbance of religious

meetings," and the other "of the observance of Sunday, as contained in those statutes, and except where such service shall be *specially* authorized by law." (1 *R. S.* 675, § 69.) This provision does not include, in terms, arrests without process in the cases not excepted, but they are directly within the evil which was intended to be averted, and are on many accounts more objectionable than where some process warranting them has been issued; and are therefore, upon the principle of construction, applied to remedial statutes, included within the prohibition. A violation of the second section of the ordinance in question is neither a breach of the peace, nor, as has been decided by the supreme court in similar cases, a crime or misdemeanor, nor an infraction of either of the two articles specified in the section which I have last quoted. The only other excepted cases are, where the service shall be specially authorized by law. I have not seen any authority which sanctions the arrest, without process, of any person on *Sunday*, for a violation of a corporation ordinance. The 12th section of the act of April 4th, 1850, in general terms empowers the policemen to arrest all persons in the *actual commission* of crime, misdemeanors, breaches of the peace, or violation of corporation ordinances. It says nothing as to the time when they may exercise this power. They are not, therefore, *specially* authorized to arrest on Sunday, within the exception in the prohibitory provision in the revised statutes. If it should, then, be asked how can they comply with the requisition of the act of April 4th, 1850, to arrest persons in the *actual perpetration* of a breach of an ordinance, when such breach is committed on Sunday, unless can they make the arrest on that day, the answer is that where a literal compliance with the provisions of two statutes would involve a contradiction, the two must be taken as substantially one enactment, if that can be done without involving an absurdity. Now the two provisions, taken together, would authorize arrests for the violation of a corporation ordinance when perpetrated, except on Sunday. This would be merely limiting the *extent* of an act on a *particular* subject, without infringing an express provision in another, for purposes applicable to the whole state. There may be, and in this case

I think there is, good reason for the application of this rule. A public arrest may be a greater desecration of the Sabbath than the act for which it is made, and for many violations of a corporation ordinance it certainly would. I think that it is well established, and it certainly is a general rule, that when a power in reference to any particular matter is conferred, without any express limitation, it shall be taken subject to such restrictions as may be made in a previous statute upon a class of which it is a part. Correspondence with a general intent, rather than a contradiction, or an exception, is to be presumed. According to these rules of application the prohibition in the act providing for the observance of Sunday extends to the arrest of violators of a corporation ordinance, and prohibits it on that day.

The 10th section of the act relative to the city of Brooklyn, passed on the 19th of June, 1851, adds a section to the 6th title of the act of 1850, purporting to authorize a justice to impose a fine upon any person arrested and brought before him for the violation of any ordinance, by law, or regulation of the common council. Nothing is said of a trial by jury, and the language would seem to indicate that no such trial should be had. At any rate a jury has been denied in the case referred to in the plaintiff's papers. The plaintiff contends that the section which I have last quoted is unconstitutional. The provision on this subject in the constitution is, that the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever. This provision relates to classes, and of course includes the individual cases which they comprise. In no other way can constitutional enactments preserve that continued efficacy which is so essential for the public good. Whenever, therefore, a new case is added to a class, it becomes subject to its rules. A penalty newly created is subject to any constitutional regulations relative to the class of penalties generally. The constitutional provision refers to usage, and that must control and define its application. It is a matter of public notoriety that suits for penalties—and the infliction in question is substantially a penalty, although it is called a fine—have generally been tried be-

Wood *v.* City of Brooklyn.

fore a jury. If there have been exceptions, they have not been sufficiently numerous to affect the general usage. The introduction of a new subject into a class renders it amenable to its general rules, not to its exceptions, unless there is something peculiar calling for their application. To allow the legislature to except from the operation of a constitutional provision by direct enactment, a matter clearly falling within its meaning, would sanction a fraud upon the organic law, and might in the end destroy its obligation. There is nothing peculiar to the penalties for violations of the ordinance in question, which should exempt them from the constitutional provision.

The question is, whether the considerations I have mentioned entitle the plaintiff to an injunction, until his case can be decided after a full investigation. So far as it relates to any matters, other than an infringement of his rights under his license, I cannot interfere. The other matters forbidden by the ordinance, are also prohibited by the laws of the state; and a court of equity ought not to interfere to protect any one from the consequences that might result from a future violation by him, of laws at all events obligatory upon him. It would be granting protection to one who can neither require nor need it, until after he has perpetrated, or resolved to perpetrate, a wrong. But the plaintiff presents a different case, when he complains of the interruption to his lawful pursuits. He alledges that the business by which he earns a livelihood for himself and his family, is seriously and constantly injured; that he apprehends from the course pursued by the officers of the city, that he may be illegally arrested on a Sunday, while engaged in his lawful pursuits, and confined, without the privilege of procuring bail, until the next day, and then be subjected to a hasty trial, without the benefit of a constitutional privilege, and all under an illegal ordinance. For some of these wrongs the law would afford him adequate redress, but no sufficient compensation could be made for family destitution or disreputable imprisonment.

The defendants must be enjoined from enforcing so much of their ordinance as in effect prohibits the sale of spirituous liquors, by innkeepers, to their lodgers and to lawful travelers,

on Sunday, pursuant to their license, so far as relates to the plaintiff, and others, in whose behalf he prosecutes this suit, until the further order of this court.

[KINGS SPECIAL TERM, November 1, 1852. *S. B. Strong*, Justice.]