Edward W. Davis et al., Appellants, *v.* The American Society for the Prevention of Cruelty to Animals et al., Respondents.

Under the provisions of the act of 1867, "for the more effectual prevention of cruelty to animals" (chap. 375, Laws of 1867), an officer of the American Society for the Prevention of Cruelty to Animals designated by the sheriff of a county as prescribed by said act (§ 7) has authority to execute the law by the arrest of all offenders found violating it, and this he can do without first obtaining a warrant for the arrest from a magistrate.

The statute does not require a special appointment from the sheriff for each arrest; the agent designated is authorized to act under a general appointment until it is revoked; and is clothed with authority to execute the law by the arrest of all offenders found violating it.

*It seems,* that where a warrant is first obtained the person executing it will be protected whether the one arrested be proved guilty or innocent;

but if the statute alone is relied upon the person making the arrest can have protection only by establishing that the person arrested was found violating the law.

An equitable action cannot be sustained to restrain an officer of said society, appointed by a sheriff to make arrests, and who has threatened to arrest plaintiff for an alleged violation of said statute, from making such arrest, on the ground that the acts complained of were not a violation of the statute, and that plaintiff would suffer great damage in his business if the threat was carried into execution.

Whether, as matter of fact, a person is guilty of a violation of said statute cannot be determined in such an action. The guilt of a person accused of a crime is to be determined in a common law court by a jury, and the people as well as the accused have the right to have it so determined.

*Woods* v. *City of Brooklyn* (14 Barb., 425), distinguished.

(Argued November 20, 1878; decided December 3, 1878.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city of New York, affirming a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts are set forth sufficiently in the opinion.

*A. J. Vanderpoel*, for appellants. Public officers may be restrained by injunction from the violation of law to the injury of individual rights. (2 Daniels' Ch. Pr. [Perkins' ed.], 1631; *People* v. *Canal B'd.*, 5 N. Y., 393; *Woods* v. *City of Brooklyn*, 14 Barb., 425, 433; Drewery on Injunctions, 183; *Hanson* v. *Gardiner*, 7 Ves., 308; *Mitchell* v. *Dow* 6 id., 147; *M. and H. R. R. Co.* v. *Artcher*, 6 Paige, 83.) The defendant Bergh cannot derive any protection from the fact that he was president of the society. (3 Wharton [7th ed.], § 2928; *Butolph* v. *Blust*, 5 Lans., 84; 1 Chitty Cr. Law, 15; *Carpenter* v. *Mills*, 29 How. Pr., 473; *Stage Horse Cases*, 15 Abb. [N. S.], 51.) The findings of the acts done by plaintiffs did not constitute a misdemeanor. (*People* v. *Ross*, 3 City Hall Rec., 191; *Murphy* v. *Manning*, L. R., 2 Ex. Div., 307; *Budge* v. *Parsons*, 3 B & S., 385; Laws 1866, p. 1456, § 26; Laws 1867, p. 834, § 1; Laws 1874, p. 12, chap. 12.)

*Elbridge T. Gerry*, for respondents.   The American Society for the Prevention of Cruelty to Animals is made by the Legislature a special police corporation to enforce the laws upon that subject.   (Laws of 1867, chap. 469, §§ 7, 9, p. 1019;  Laws of 1867, chap. 375, § 8;  *Regents Univ. of Maryland* v. *Williams*, 9 G. & J. [Md.], 388;  Laws 1874, chap. 12, § 3.)   The acts of Mr. Bergh complained of were lawful and proper.   (1 Laws 1867, chap. 375, § 1;  Laws 1874, chap. 12  §§ 1, 8;  1 Edms. R. S. [2d ed.], p. 17 of preface, § 13;  *Adriance* v. *Suprs., etc.*, 12 How. Pr, 224, 231;  Potter's Dwar. on Stat., 274, 275;  *Butolph* v. *Blust*, 41 How. Pr., 481;  5 Lans., 82;  *Willis* v. *Warren*, 17 How. Pr., 101;  Laws of 1874, chap. 12, § 3.)   An injunction should not be granted as an adequate remedy at law exists for any injury improperly sustained.   (*Stage Horse Cases*, 15 Abb. Pr. [N. S.], 51.)

Earl, J.   The plaintiffs allege in their complaint that in January, 1873, they were engaged extensively in the business of slaughtering hogs, in the city of New York ; and they describe the manner in which they conducted their business, claiming that they slaughtered the hogs by the most approved, expeditious, humane and painless methods ; and they allege that the defendant Bergh, the president of the defendant, The American Society for the Prevention of Cruelty to Animals, came to their place of business, and announced to them and their employes that they must discontinue slaughtering hogs by the methods then used, and thereupon arrested the plaintiff Crane and one of such employes for alleged cruelty to animals, and threatened that he would return in one week, and if he then found the plaintiffs or others carrying on said business, in the same way, he would arrest all persons engaged in it and stop the business, as often as he found plaintiffs conducting it in that way.   They then allege the extent and character of their business and facts showing that if Bergh should carry his threat into execution they would suffer great damage, for which no adequate remedy could

be had in actions at law, a multiplicity of which would have to be instituted at great expense. They further allege that they are informed and believe that Bergh claims to have authority to interfere with and stop plaintiffs' business, under pretence of cruelty to the hogs slaughtered, and that they are apprehensive that unless restrained he will endeavor to carry his "threats into execution, and will continually interfere with and arrest plaintiffs and their employes, and stop said business so long as plaintiffs carry it on in the manner aforesaid;" and they pray judgment perpetually restraining the defendants and their agents "from interfering with plaintiffs in their business in any way or manner whatever, and from interfering with their agents and employes while engaged" in such business. They do not allege that there is no valid law under which the defendants can act to prevent cruelty to animals, or that the defendants are not authorized to prevent such cruelty; but the claim put forth is that the plaintiffs do not practice any cruelty to the hogs; and they thus tender an issue of fact as to their guilt or innocence of the crime alleged against them.

The defendants, in their answer, take issue with the plaintiffs, and allege, among other things, that the methods adopted by plaintiffs for slaughtering the hogs are cruel and are attended with needless torture and torment; and that Bergh went upon plaintiffs' premises, at the time mentioned, as an officer of the Society for Prevention of Cruelty to Animals, without any malice towards plaintiffs, and for the sole purpose of enforcing the laws of the State enacted to prevent such cruelty.

Upon the trial, the plaintiffs gave very positive evidence tending to show that they did not practice needless cruelty upon the hogs slaughtered, and also to show the allegations in their complaint as to the manner in which they would be greatly damaged by the threatened interference of the defendants. They also proved that the defendant Bergh came to their premises, as alleged, and announced that they must cease to slaughter the hogs in the manner then in use, and

that he should return in a week, and if he found them slaughtering the hogs in the same way, he would arrest every man engaged. He made no threats to break up or stop their business,— but simply that he would make the arrests.

The defendants proved that Bergh was president and chief executive officer of the Society for the Prevention of Cruelty to Animals ; and that he held an appointment from the sheriff of the city and county of New York, by virtue of the following instrument, signed by the sheriff and dated January 10, 1871 : " I, Matthew T. Brennan, sheriff of the city and county of New York, do hereby depute, authorize, and appoint Henry Bergh a special deputy sheriff to assist in preserving the public peace, and to make arrests pursuant to section eight of an act entitled ' an act for the more effectual prevention of cruelty to animals,' passed April 12, 1867." They also proved that Bergh, having, as such president, received complaints as to the mode in which plaintiffs conducted their business, went upon their premises, and believing that they were violating the laws by their cruelty to the hogs, made the threats of arrest as proved by the plaintiffs.

I am of opinion that the case made by the pleadings and proofs is not one of equitable cognizance.

By chapter 469, of the Laws of 1866, the defendant, the American Society for the Prevention of Cruelty to Animals, was incorporated. The purpose of the corporation was to enforce the laws enacted to prevent cruelty to animals. It is provided in the act that the corporation, among other officers, shall have a president and such other officers as shall from time to time seem necessary to the society.

We have had, in this State, for many years, statutes for the protection of animals against cruelty. They have from time to time been amended and their scope extended, until in 1867, by chapter 375 of the laws of that year, a more comprehensive act was passed. By section one of that act it is provided, among other things, that if any person shall torture or torment, or unnecessarily or cruelly mutilate, or

cause or procure to be tortured or tormented any living creature, he shall, for every such offense, be guilty of a misdemeanor. . Section eight provides that " any agent of the American Society for the Prevention of Cruelty to Animals, upon being designated thereto by the sheriff of any county in this State, may, within such county, make arrests and bring before any court or magistrate thereof, having jurisdiction, offenders found violating the provisions of this act." It was under this section that Bergh received his appointment from the sheriff. He was the president and chief executive officer of the society, and hence one of the persons who could be appointed by the sheriff. The appointment was sufficient to authorize him to act under it until it was revoked. The statute does not require a special appointment for each arrest. When an agent has once been designated, he is clothed with authority to execute the law, by the arrest of all offenders found violating it ; and this he can do without first obtaining a warrant for the arrest from a magistrate. The law contemplates the arrest of offenders while engaged in inflicting the cruelty — in the language of the law " found violating the .provisions of this act." The purpose is to prevent cruelty ; and this humane purpose would in large measure be defeated, if the agent of the society was required first to obtain a designation from a sheriff, and then a warrant from a magistrate. The statute furnishes the warrant. It is true that a warrant may first be obtained ; and if it is, the person executing it will be protected like any other officer, whether the person arrested shall be proven to be guilty or innocent. But if the statute alone be relied upon as the warrant, then the person making the arrest can have protection only by establishing that the person arrested was found violating the law. (*Farrell* v. *Warren*, 3 Wend., 253; *Burns* v. *Erben*, 40 N. Y., 463; *Butolph* v. *Blust*, 5 Lans., 84.) Provisions for the arrest of offenders without warrant are found in other statutes, notably in sections 16 and 17 of chapter 628 of the Laws of 1857, the " act to suppress intemperance, and regulate the sale of intoxicating liquors."

The authority to make arrests, found in section 17, is conferred in nearly the same language used in the statute under consideration ; thus : " It shall be the duty of every such officer, whenever he shall find any person intoxicated in any public place, to apprehend," etc.

Hence it cannot be disputed that Bergh was acting under a valid law and regular authority, and that he had the right to make the threatened arrests, if the plaintiffs were actually engaged in violating the law to prevent cruelty to animals. The only question for contestation was whether, as matter of fact, they were guilty or innocent of such violation ; and the determination of that question could not, by such an action as this, be drawn to a court of equity.  Whether a person accused of a crime be guilty or innocent, is to be determined in a common law court by a jury ; and the people, as well as the accused, have the right to have it thus determined.  If this action could be maintained in this case, then it could in every case of a person accused of a crime, where the same serious consequences would follow an arrest ; and the trial of offenders, in the constitutional mode prescribed by law, could forever be prohibited.  A person threatened with arrest for keeping a bawdy house, or for violating the excise laws, or even for the crime of murder, upon the allegation of his innocence of the crime charged and of the irreparable mischief which would follow his arrest, could always draw the question of his guilt or innocence from trial in the proper forum.  An innocent person, upon an accusation of crime, may be arrested and ruined in his character and property, and the damage he thus sustains is *damnum absque injuria*, unless the case is such that he can maintain an action for malicious prosecution or false imprisonment.  He is exposed to the risks of such damage by being a member of an organized society and his compensation for such risks may be found in the general welfare which society is organized to promote.

This action is absolutely without sanction in precedents or principles of equity.  It is impossible, in a general way, to

define the cases in which courts of equity will intervene by injunction to prevent irreparable mischief.   They will sometimes enjoin public officers, who are attempting to act illegally or without competent authority, to the injury of the public or individuals.   As was said by ALLEN, J. in *The People* v. *Canal Board*, 55 N. Y., 390 : " That public bodies and public officers may be restrained by injunction from proceeding in violation of law, to the prejudice of the public or to the injury of individual rights, cannot be questioned." But the case contemplated by that learned judge was not one like this, where a public officer, acting in good faith, under competent authority, was threatening to arrest persons accused of crime, for the purpose of taking them before the proper tribunal for trial upon the question of their guilt or innocence.   The administration of the criminal law would be greatly paralyzed, if no criminal could be arrested until it could be infallibly ascertained that he was guilty of the offense charged.   The case nearest in point for the plaintiffs is that of *Wood* v. *The City of Brooklyn* (14 Barb., 425). It is but a Special Term decision, and yet it is by an able judge ; and I will refer to it only to point out more clearly a distinction which I make.   There an injunction was granted to prevent the enforcement of a void ordinance of the city of Brooklyn.   Without determining whether that case was properly decided, it is widely different from this.   If here, the law, under which Bergh was acting, had been wholly void, or if he had been wholly without authority to act under the law, then this case would have been analogous to that. But that case would have been widely different, and certainly have required a different determination, if the ordinance had been valid, and the sole question had been whether or not the plaintiff was guilty of its violation.   It is therefore unnecessary to determine, in this case, whether the plaintiffs were, as matter of fact, guilty of violating the law ; and for the reasons stated, the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.