Arnoux, J.
It is indisputably established by the evidence produced on the hearing, that in the present condition of metallurgical science and skill it is impossible to maintain a blast furnace without replen ishing the fires within every twenty-four hours. The affidavit of Mr. William E. Dodge is conclusive upon this point. I can infer from the evidence that Mr. Dodge has, for nearly half a century, by precept and by example, endeavored to secure sanctified observance of Sunday as a Christian day of rest. Now, Mr. Dodge testifies that he is acquainted with this business in England and the United States; that in his earnest desire to relieve his workmen from labor on Sunday he offered a reward of $1,000 to any one who would invent or devise any method by which such labor could be avoided, and that it had never been accomplished. The evidence likewise fully establishes that the business is necessary. This has been so decided in Pennsylvania- and Indiana. In many cases there is a border line of doubt, but in this case there can be none as to the necessity. The use of iron is essential to civilization.
The complaint alleges that the plaintiffs only perform the work on Sunday that is 'necessary to prevent the chilling of the furnace, and that the defendants threaten to interfere therewith. And this allegation is not denied by defendants. It is therefore established. In a recent case where a threat was alleged and denied this court held that there was no ground for injunction (Reiff v. Western Union Tel. Co.). In the case of Clark v. N. Y. Life Ins. and Trust Co. (64 N. Y. 33), the defendants threatened to build on the corner of Twenty- *450 first street and Broadway to the line of the street. No overt act had been committed. The intention was not denied. The court held it had jurisdiction to interfere by injunction.
The only question raised by the corporation counsel in this case is the power of this court to enjoin the defendants. He contends that the proper course for plaintiff is to submit to the arrest of its servants, defend them before a magistrate, and if convicted, sue out a writ of habeas corpus ; and he further contends that this court has no jurisdiction. • If this court has no equity jurisdiction in this case and this injunction is consequently denied, the presumption is that the defendants will execute their threats. Let us contemplate a possible result in that event. The men are arrested and held by the magistrate, on habeas corpus the prisoners are remanded, on review the convictions are affirmed, and on writ of error to the court of appeals they are reversed. In the meantime the furnace has chilled, that is, the molten mass, for want of fuel, has become solidified so that the iron, the flux, the firebrick are all bound together in one indivisible mass. This is a matter so serious that it costs $40,000 to remedy. But this is not all: the furnaces have to stand idle during the pending of the appeal, the skilled labor employed has been scattered, and the contracts unfulfilled that have been previously made and for which heavy -damages have been incurred. In a .word, the plaintiff has been ruined.. For all this it has no redress. The defendants as public officers acting under the law assume no responsibility for their conduct. And yet the courts cannot interfere, is the assertion of the learned corporation counsel. If this is true, it is a blot upon the administration of justice. If it is true, however, the courts must so declare and leave the redress to the legislature.
*451 Has this court then no power to avert this possible loss ?
As establishing the negative, the case of Davis e, American Society for the Prevention of Cruelty to Animals (75 N. Y. 362) is cited. There the court of appeals held that an injunction could not be sustained to restrain an officer of that society from making a threatened arrest. The facts show that plaintiffs conducted their business in a manner violative of the law against cruelty to animals, and they wished -an indulgence therein from, the court, which was denied. The case of Birch v. Cavanaugh (12 Abb. Pr. N. S. 410) also held, that an inj unction would not lie merely to restrain an illegal arrest, and this on the ground that such an arrest1 ‘ is not of such an irremediable nature that it cannot be compensated in damages.” This case was followed in the case of Murphy v. Board of Police (Daily Register, March 27, 1882), where the court held it would not restrain the police from interfering with a species of gambling known as book-making, for such acts were in violation of the statute of 1877, and that persons committing such acts were guilty of a misdemeanor.
These cases are clearly distinguishable from the case at bar. They are all against the person. Injunction never lies to restrain the public authorities from arrests for crimes charged against persons, as is shown by the last two cases above cited, nor does it lie against the method of doing a particular business as in the case first above cited. Here, however, the proposed action of the police is against the prosecution of this business, no matter in what form it may be done. If the officers of the society in the Davis case had attempted to prevent the plaintiffs slaughtering hogs altogether, a different question would have been presented,
While the authorities cited do not apply to prevent an injunction, the counsel for the plaintiffs find no *452 authorities that sustain the position claimed, that an injunction may issue, and the corporation counsel urges that as no authority can be found to restrain the public authorities from committing a trespass, and it is conceded that the act complained of would amount to that, the very silence of the books is an eloquent argument in his behalf.
This is not a conclusive argument in his favor. In Palmer v. Foley (36 Super. Ct. [J. & S.] 14), the court say: “The mere novelty of the action, or that the relief sought is without precedent, is not in my judgment sufficient to defeat it (the process of injunction) if there is a principle to sustain it.” If it were otherwise, jurisprudence would not progress with the demands of the times.
In the Mohawk and Hudson R. R. Co. v. Artcher (6 Paige, 83), the chancellor held that the court of chancery has jurisdiction to proceed by injunction where public officers, under a claim of right, are proceeding illegally or improperly to injure or destroy the real property of an individual or a corporation, and in People of the State of New York v. Canal Board (55 N. Y. 390), the court of appeals affirmed that doctrine, saying: “Public bodies and public officers may be restrained by injunction from proceeding in violation of law to the prejudice of the public or to the injury of individual rights.” The only limit that that court has put upon the foregoing, is that laid down in Western R. R. Co. v. Nolan (48 N. Y. 513, 518), “ the public officers which the court has the power to restrain when proceeding illegally under a claim of right, injuriously affecting the property or rights of a party, are ministerial and not judicial officers.” Boards of health, building departments and police commissioners, are ministerial officers. It has been repeatedly held in England that boards of .health should be restrained by injunction from committing a nuisance by polluting a *453 stream, whereby the property of others was iniured (Glossop v. Heston, &c., L. R. 12 Ch. Div. 102; Attorney-General v. Hackney Local Board, L. R. 20 Eq. Cas. 626; Mayor, &c. v. Rural, &c., L. R. 1 Exch. Div. 344).
There is no class of cases wherein, the court of chancery has so universally refused to interfere by injunction as in libel cases, and yet in three reported English cases, where the libel consisted of a publication that tendered to injure the business of the party the court enjoined such-publication (Saxby v. Esterbrook, L. R. 3 Com. Pl. Div. 339 ; Thorley Cattle Food Co. v. Masson, 14 Ch. D. 763; Thomas v.Williams, L. R. 14 Ch. D. 864); and in one unreported case in this State these authorities were followed. The case last referred to is reported only as to the matters directly involved in the issues thereon (Matter of Kelly, 3 Hun., 636; affirmed in 62 N. Y. 198). The proceeding was initiated by a lawyer to have the respondent disbarred for alleged unprofessional conduct, from which charge he was most triumphantly-vindicated by every court before which the matter came. The moving attorney printed several hundred copies of his papers with the avowed intention of circulating them among the legal profession and others to injure Mr. Kelly in his business, and the supreme court on an interlocutory petition enjoined their circulation. All these are recent cases, and tend to show that the courts are becoming more liberal in enlarging the class of the cases in which such writs are granted, and that the writs are granted primarily against persons where the injury results to property.
The authorities above cited are deemed by this court a sufficient warrant for holding that upon principle it has right to issue an injunction in this case.
In the Stage Horse Cases (15 Abb. Pr. N. S. 51), it was held, that an injunction would lie against the American Society for the Prevention of Cruelty to Ani *454 mals, a society which exercises police power, and is, therefore, as respects the question we are now considering, a ministerial and not a judicial body, to restrain the persistent commission of trespass, even of a mere personal nature where they affect a corporate franchise. Landlords have been enjoined in England from levying distress (Shaw v. Earl of Jersey, L. R. 4 Com. Pl. Div. 359).
I have been referred to a case that seems to me to be directly in point. In the case of the Tribune Association v. Sun Printing and Publishing Association (7 Hun, 175), it'was held, that the powers of public officers acting under the power of an act of legislature for the protection of life and property,—e. </., the superintendent of public buildings in the city of New York,—are limited to the exercise of a proper discretion and the exigency of the circumstances, and he will be restrained by injunction from an arbitrary exercise of power. “An injunction may be granted to restrain a trespass when irreparable injury may result from the threatened wrong.”
We have thus shown on principle and authority the power of the court, and that the facts bring this case within the rule on which the court should act.
The injunction is continued.