YORKVILLE AMUSEMENT CO. v. BINGHAM, Police Com'r, et al.

(Supreme Court, Special Term, New York County.   October 4, 1909.)

INJUNCTION (§ 77*)—SUBJECTS OF PROTECTION AND RELIEF—CRIMINAL PROSE-
CUTIONS.

    An injunction will not lie prohibiting the police from arresting the of-
ficers and employés of a moving picture company if its place of business
is opened on Sunday, irrespective of the theory upon which the arrest is
threatened, and whether it is a sound one or not.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 146, 147; Dec.
Dig. § 77.*]

Action by the Yorkville Amusement Company against Theodore
A. Bingham, as commissioner of police of New York City, and an-
other.   Motion for an injunction pendente lite.   Motion denied.

Thomas Gilleran, for the motion.

Francis K. Pendleton, Corp. Counsel (L. W. Reddington, of coun-
sel), opposed.

GIEGERICH, J.   The plaintiff, a corporation engaged in operating
a so-called "moving picture" business at No. 1503 Third avenue, in
the borough of Manhattan, New York City, has brought an action
to obtain an injunction, as prayed for in the complaint, to restrain the
defendants and their subordinates "from interfering with the business
of the plaintiff carried on on Sundays" at the place above named.

The moving affidavits set forth a license obtained from the mayor of
the city, and bearing date the 25th day of January, 1909, authorizing
the conduct of such moving picture business at the place named, but
containing the following sentence:

"On consideration of receiving this license, the undersigned licensee hereby
stipulates and agrees that he will not open or operate his moving picture show
on Sundays."

It is further set forth in the moving affidavit that the defendants
have threatened to arrest the officers and employés of the plaintiff if
the "said place of business is opened on Sunday, under the stipulation
contained in the license herein set out"; further stating that the stip-
ulation was given on the issuing of the license because the licensee
feared that its place of business would be closed if no license were
issued, and that no license would be issued unless such stipulation
was signed.   It is also claimed that the stipulation is arbitrary and un-
reasonable and discriminative, and should not be enforced.   The mov-
ing affidavit asks for an injunction pendente lite in somewhat differ-
ent form from that prayed for in the complaint, namely, that the de-
fendants and their subordinates be restrained from interfering with
the business of the plaintiff carried on on Sundays at the place named,
and from closing or attempting to close such place of business, and
from arresting or causing the arrest of any of the officers or em-
ployés of the plaintiff except for a misdemeanor committed within or
without their presence, or to execute a warrant of arrest upon the
premises.

    *For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

    118 N.Y.S.—48

The opposing affidavit made by the mayor of the city states that on the 24th day of December, 1908, having received numerous complaints with respect to the conduct of moving picture shows in this city, including that carried on by the plaintiff, he formulated a new policy in regard to their operation and established a new form of license for common shows; that, among other objections, it was urged that the opening and operation of such shows on Sundays and the work done in and about the premises by the employés seriously disturbed the peace and quiet and good order of that day; that the policy which he then inaugurated was to issue licenses only to such persons or corporations as would stipulate that they would not open and operate a moving picture show on Sunday; and that the new form of license established by him on that date was one containing a stipulation by the licensee that he would not open and operate his places on Sunday. The affidavit further goes on to state that to effectuate this new policy the mayor had revoked by an order all licenses issued for moving picture shows, with the view of issuing new ones to such persons and corporations only as would stipulate not to open and operate their places on Sundays, but that an injunction was obtained restraining him from revoking such licenses by one order upon the ground that he had not the right to revoke all the licenses by an omnibus order; that thereupon, to carry into effect his policy, it became necessary to await the expiration of each license, and he instructed the chief of the bureau of licenses to issue no licenses for common shows thereafter except those containing a stipulation wherein the licensee agreed not to open and operate his place on Sundays, and since that date no such license has been issued without such stipulation. The affidavit further states that such apparent discrimination as exists between licenses issued before and after December 24, 1908, is due solely to the injunction order referred to, and not to any affirmative act of his, and that such seeming discrimination is decreasing from day to day as licenses issued prior to that date expire, and will cease entirely not later than the 23d day of December, 1909.

Another reason given for formulating such new policy and establishing the new form of license was the fact that to prevent violation of the law against Sunday work and to arrest violators would necessitate the employment of a large number of police officers for that purpose whose services could be used to better advantage to the city at large in other directions. It is further stated by the mayor that it appeared to him that to permit moving picture shows to open and operate under license on Sundays while small store and shop keepers were compelled to close was a gross discrimination in favor of persons catering to pleasure seekers as against those providing the necessities of life. In addition to the affidavit just referred to, there is an affidavit of an assistant corporation counsel setting forth certain ordinances of the city of New York, and a brief affidavit of a patrolman stating that on the 23d day of May, 1909, he visited the plaintiff's premises and found that an admission fee was charged, but that there was no barker or crowd in front of them, and that the show consisted of a scene representing "Solomon's Judgment," another one representing the "Holy City," another one "A Review of the United States Navy,"

and the fourth representing a "Harvard and Yale Boat Race." There is no affidavit from either of the defendants, and no denial in any of the opposing papers of the plaintiff's assertion that the defendants have threatened to arrest its officers and employés if its place of business is opened on Sundays. In the moving affidavit in this particular case there is the added phrase "under the stipulation contained in the license herein set out." The exact meaning of that phrase is not clear, and it is perhaps unnecessary to consider it, because in the similar cases brought on for hearing at the same time and argued and submitted as a group involving the same principle there is no such expression used; the allegation being simply that the defendants have threatened to arrest the plaintiffs or their employés or officers if they opened their respective places on Sundays. Furthermore, in the view I take of the case upon the authorities, it is immaterial upon what ground the police officials threaten to make the arrest—that is, whether upon the ground that it is unlawful to open on Sunday because the effect of the stipulation in question limits the license and so renders the places virtually unlicensed except on week days, or upon the ground that it is unlawful under the penal statutes to conduct such exhibitions on Sundays at all, whether licensed or unlicensed, or upon some other ground. As they threaten to make the arrests, it must manifestly be upon some theory that the persons to be arrested are doing an unlawful act. Precisely what that theory is, and whether it is a sound one or not, need not be determined on such a motion as this. The language used by Judge Ingraham in Suesskind v. Bingham, 125 App. Div. 787, 110 N. Y. Supp. 213, is in point, and is as follows:

"It is quite impossible to see upon what ground the police could claim that these plaintiffs were violating any statute upon the facts here presented. The same question is presented, however, as in the case of Eden Musee American Co., Ltd., v. Bingham, 125 App. Div. 780, 110 N. Y. Supp. 210, decided herewith, and plaintiff's remedy is not by injunction but by an action at law against the individual officers, or an indictment, if their property or business is interfered with."

In the Eden Musee Case referred to an injunction was sought to restrain the police officers from carrying out a threat to arrest the plaintiff's officers or employés if they gave their exhibition, consisting principally of wax figures, on Sunday. The court observed that there was presented the question whether a court of equity has jurisdiction to interfere with a police officer in the performance of his duty by an injunction prohibiting the police officer from arresting a person so charged, upon the ground that the act which the plaintiff was about to do was not a crime, and the police officer was mistaken in his conclusion that it was. The court held, relying chiefly upon Davis v. American Society, etc., 75 N. Y. 362, and Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. (N. S.) 678, 111 Am. St. Rep. 759, that an injunction in such a case was improper. Those decisions I deem controlling upon this application.

The motion is therefore denied, with $10 costs.