MARIA LOUISE CLARK, Respondent, *v.* THE NEW YORK LIFE INSURANCE AND TRUST COMPANY et al., Appellants.

K. and M. and wife entered into a contract which, after reciting that the parties were the owners of divers lots of land on either side of Twenty-second street, between Fourth avenue and Broadway, in the city of New York; that dwelling-houses had been erected on each side of said street, with a court-yard seven and a-half feet in front, and that the parties deemed it for their mutual advantage that the "lots *fronting on said street*" should be occupied exclusively by dwelling-houses, the fronts of which should be placed seven and a-half feet back from the line of the street, contained an agreement that so much of their respective lots as were contained between the line of the street and a line seven and a-half feet therefrom should "remain and be enjoyed as a court-yard in front of any houses to be erected on said lots." The parties, at the time of making the agreement, had before them a map made several years before, by which the lots on Broadway and Fourth avenue were laid out twenty-five feet wide and ninety-six feet deep, while the intermediate lots were twenty-five feet on Twenty-second street and ninety-six feet deep. In an action brought by plaintiff, who subsequently purchased one of the lots on Twenty-second street to restrain defendant from building on a corner lot on Broadway up to the line of Twenty-second street, *held*, that it was to be assumed that the parties, in making the contract, had in contemplation the lots as laid out and designated on the map; that the corner lots fronted respectively on Broadway and Fourth avenue, and it was only the intermediate lots which fronted on Twenty-second street within the meaning of the contract; and that, therefore, the lot in question was not included in said provision of the contract, and defendants could not be restrained from building thereon up to the line of Twenty-second street.

*Clark* v. *N. Y. L. I. and T. Co.* (7 Lans., 322) reversed.

(Argued January 17, 1876; decided January 25, 1876.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department modifying a judgment entered upon a decision of the court at Special Term. (Reported below, 7 Lans., 322.)

This action was brought to restrain defendants from building upon a strip of land lying along the southerly line of Twenty-second street, in the city of New York, seven feet six inches in width on Broadway, and 122 feet two and one-half inches on Twenty-second street.

On the 12th May, 1849, Philip Kearney of the one part, and Alexander Macomb and wife of the other, who were owners of land on Twenty-second street and Fourth avenue, entered into a contract of which the material portions are as follows:

"Whereas, The said party of the first part is the owner of divers lots of land in the Eighteenth ward of the city of New York, on the northerly side of Twenty-second street, between the Fourth avenue and Broadway; and whereas, the said parties of the second part, in right of the said Susan, are the owners of the divers other lots of land on the southerly side of said Twenty-second street, between the said Fourth avenue and Broadway; and whereas, divers dwelling-houses of brick or stone have been erected on each side of said street, which have been set back seven feet and six inches from the line of the street, thus leaving a court-yard in front of said houses seven feet and six inches between the said houses and the line of the street; and the parties hereto deeming it to be for their mutual advantage that the lots fronting said street, when built upon between the said Fourth avenue and Broadway, should be occupied exclusively by dwelling-houses, and that the fronts of all such dwelling-houses should be placed back seven feet and six inches from the line of the street so as to range with those already built of brick or stone, and that no nuisance should be permitted on said lots between the Fourth avenue and Broadway aforesaid, do, for themselves and their respective heirs and assigns, grant and agree to and with each other that so much of their said respective lots

belonging to them respectively, as is contained between the line of the street and a line seven feet and six inches therefrom, shall forever hereafter remain and be enjoyed as a court-yard in front of any houses to be erected on said lots."

The court found that prior to the time of the execution of the agreement a map had been made of the two half blocks bounded by Broadway and Fourth avenue, with Twenty-second street running between. This map, or a transcript therefrom, was before the parties when the agreement was made. Upon the map the south-east corner of Broadway and Twenty-second street was divided into six tier of lots, the corner one of which was twenty-five feet and three-fourths of an inch on Broadway and ninety-six feet one inch on Twenty-second street. Three others were about twenty-five feet on Broadway and running back to the line of the corner lot. The lots on Twenty-second street were laid out twenty-five feet wide on that street and running back about ninety-six feet.

Macomb and wife, subsequent to the execution of the contract, conveyed to Uriah F. Carpenter one of the lots situate on the southerly side of Twenty-second street, one hundred and twenty-two feet two and one-half inches from Broadway. Carpenter erected a dwelling-house thereon conforming to the restriction contained in the agreement, which lot is now owned by plaintiff. Mrs. Macomb died seized of the lots between plaintiff's and Broadway. The fee at the time of the commencement of this action was vested in defendant, The New York Life Insurance and Trust Company, in trust for the other defendants, the children of Mr. and Mrs. Macomb, Mr. Macomb having an estate for life as tenant by the curtesy. In 1868 said company, as trustee, and Mr. Macomb executed a lease of the four lots on Broadway and the adjoining lot on Twenty-second street to defendant James Purssell, who had commenced to erect buildings thereon. At the time plaintiff purchased, the corner on Broadway was occupied by buildings in a single plot which were set back from the southerly line

of Twenty-second street seven feet six inches.   Further facts appear in the opinion.

The court held, as conclusion of law, that the corner lot was not included in or controlled by the provisions of the agreement, but that the lot leased to Purssell between the corner lot, as laid out · on the map, and plaintiff's, was, and directed judgment restraining defendants, their agents, etc., from building on that portion thereof lying between the line of Twenty-second street and a line seven feet six inches southerly therefrom.

The General Term held that the contract embraced the corner lot, and modified the judgment by extending the injunction so as to include that portion thereof north of a line seven and one-half feet south of Twenty-second street.

*Lyman Tremain* for the appellants.   It was proper to resort to extrinsic facts to ascertain to what lots the agreement referred.  (57 N. Y., 668; 13 id., 569; 1 Gray, 138; 9 Alb. L. J., 117, 281.)   The positive testimony of Macomb, that the agreement was made with reference to the map, could not be arbitrarily rejected.  (45 N. Y., 549; 46 id., 683; 25 id., 363; 6 N. Y. S. C., 366.)   Purssell was entitled to protection as a subsequent grantee without notice.  (*Cole* v. *Hughes*, 54 N. Y., 444.)   This was not a proper case for an injunction.  (*Olmstead* v. *Loomis*, 6 Barb., 152; Will. Eq., 342; 3 Blk. Com., 221, 222.)

*W. A. Beach* for the respondent.   The covenant of the contract was obligatory upon the assigns of both parties having actual or constructive notice.  (*Tallmadge* v. *E. R. Bk.*, 26 N. Y., 105; *Birdsall* v. *Fiedler*, 12 How., 551; *Barrow* v. *Richard*, 8 Paige, 351; *At. Dock Co.* v. *Leavitt*, 50 Barb., 135.)

CHURCH, Ch. J.   The rights of the parties in this action depend upon the construction to be given to the agreement of the 12th of May, 1849, between Philip Kearney and

Alexander S. Macomb and wife. The learned judges, at Special and General Term, delivered opinions, and materially differed as to the proper construction to be given to the contract. The parties were respective owners of a large number of lots on each side of Twenty-second street in the city of New York; and the purpose of the agreement was to reserve seven feet and six inches in front of the houses on each side from being built upon, and the contention is, whether this restriction was intended to apply to the corner lot facing Broadway, the action being to restrain building upon that lot within the distance of seven feet and a-half on Twenty-second street. From the disagreement between the learned judges below, it would be inferred that the question is not free from difficulty. To determine which construction should be adopted requires a careful analysis of the language, together with a due regard to the effect of surrounding circumstances. The preamble recites that the parties are respectively the owners of divers lots of land on either side of Twenty-second street, between Fourth avenue and Broadway; that divers dwelling-houses, of brick or stone, have been erected on each side of said street, leaving a court-yard seven and a-half feet in front of said houses, and then proceeds as follows: "And the parties hereto deeming it to be for their mutual advantage that the *lots fronting said street*, when built upon between Fourth avenue and Broadway, should be occupied exclusively by dwelling-houses, and that the fronts of all such dwelling-houses should be placed back seven feet and six inches from the line of the street  *  *  *  do, for themselves and their respective heirs and assigns, grant and agree to and with each other that so much of their respective lots, belonging to them respectively, as is contained between the line of the street and a line seven feet and six inches therefrom shall forever hereafter remain and be enjoyed as a court-yard in front of any houses to be erected on said lots," etc.

The contract assumes that the vacant land upon the street had been divided into lots, although many of the lots had not

been built upon, and were not distinguishable by visible mon-
uments. It is manifest also, I think, from the language
employed, that the parties intended to reserve the seven and
a-half feet only from the lots fronting on Twenty-second
street. It expressly recites that they deem it to their advan-
tage that the lots fronting on the street should be exclusively
occupied by dwelling-houses, the fronts of which should be
placed back seven and a-half feet from the line of the street,
and the agreement follows, that seven and a-half feet shall
remain as a court-yard *in front of any houses* to be erected
on said lots. This language refers to houses to be built on
lots fronting on the street, and contemplated that those houses
would be dwelling-houses, although the restriction would
probably apply to any other house built on a lot fronting on
the street. The question becomes material, therefore, to
determine what lots fronted on Twenty-second street, or,
rather, to determine whether the lot on the corner of Broad-
way did so front within the true meaning of this contract.
As before stated, the contract assumes that the land had been
divided into lots, and it must be presumed that the parties
knew what the division was. Besides, the fact of the division
into lots was proved; and it was proved also that, several
years prior to making the agreement in question, a map had
been made and filed in the register's office; and it was also
proved that at the time of the making of the agreement the
parties had this map, or a transcript thereof, before them.
According to this map, lots on Broadway were laid out
twenty-five feet wide, and running back about ninety-six
feet, and they were laid out in the same manner on Fourth
avenue at the other end of the block, while between these
lots the lots were laid out the other way, twenty-five feet on
Twenty-second street, and running back half of the width of
the block, which was about ninety-six feet. The question
in every contract is to determine what the parties intended,
and if the language is clear and unambiguous, that is to con-
trol; but it is generally competent, and often indispensable,
to refer to the subject-matter and other circumstances, and

to consider what the parties saw and knew in order to ascertain their meaning.   The map was therefore competent if it throws light upon what the parties intended by lots fronting on Twenty-second street.

It was argued by the learned counsel for the plaintiff, that the corner lot being twenty-five feet on Broadway and extending back along Twenty-second street ninety-six feet, fronted as well on Twenty-second street as on Broadway.   In some sense this is true, inasmuch as it is accessible to the street and adjoins it, but I cannot concur in this view in the sense in which it should be construed in this contract.   Language is to be construed according to its ordinary meaning, and not in a technical or artificial sense.   According to the general understanding, as well of those conversant with the business of real estate as others, the lots laid out twenty-five feet on Broadway would be regarded as fronting on that street, and so on Fourth avenue, and the lots between those tiers of lots running the other way, would be deemed to front on Twenty-second street, and it must be presumed that the parties so regarded them, and that when they specified lots fronting on Twenty-second street, they intended to distinguish between those and other lots fronting on other streets.   It matters not that it is possible to make a front to a building on Twenty-second street, which may be erected on the corner lot.   Such would not be usual even if practicable, but this would not change the fact that the *lot* fronts on Broadway, and the question is which way the lot fronts as understood by the parties.   Nor do I regard it important that, at the time the contract was made, the lots on Broadway were not built upon nor designated by any visible monuments.   It must be assumed that the parties had in contemplation the lots as laid out and designated on the map. It is inferable also, I think, from the contract, that the parties contemplated that the tiers of lots on Broadway and Fourth avenue would or might be occupied for business purposes, but whether this was so or not, it is a circumstance entitled to some weight against the construction claimed by the plain-

tiff, that to reduce the corner lot seven and a-half feet, which would leave it only seventeen and a-half feet wide, would very seriously impair its value, either for business or other purposes, while a court-yard in front of dwelling-houses from the end of the lots ninety-six feet deep would not diminish the value, and if uniformly observed through the street might increase it. It would, doubtless, be desirable to the owners of dwellings on the street to have the open space through to Broadway, but the parties who made the arrangement were the owners of the lots on Broadway and Fourth avenue as well as the others, and they would naturally regard the interests connected with those lots as much as the others. The question of the extent of the covenants against nuisances is not before us, and whether that extends to the Broadway lots need not be considered.

From the best examination I have been able to make, I feel constrained to agree with the Special Term, that the agreement did not include the lot on the corner of Broadway and Twenty-second street, extending back ninety-six feet. It is sought seriously to interfere with the right of property in that lot, and to justify such interference requires something more than a doubtful right. If the true construction of the contract is doubtful, as perhaps it should be regarded, the plaintiff must fail. A reasonably clear case should be made before the rights of an owner of property should be impaired to the extent claimed. As to the lot east of the corner lot, the injunction was properly granted.

The judgment of the General Term modifying the judgment of the Special Term must be reversed, and the judgment of the Special term affirmed.

All concur; RAPALLO, J., not sitting.

Judgment reversed.