## COVENANT AGAINST NUISANCE.

A provision inserted in a mortgage, that " no part of the premises conveyed are to be used for any trade, business, or purpose that will prove a nuisance to the owners of the adjoining premises " is inoperative as a covenant running with the land. The foreclosure of such a mortgage does not continue the inhibition. As such a provision does not inhibit any particular trade, calling, or purpose, it is not such a covenant as amounts to an incumbrance, even if contained in a grant. It merely restricts the use for purposes which may prove a nuisance to neighboring premises. The law, which is impressed on every grant, inhibits such a use, and no force is added to the inhibition by the insertion of these words in the instrument.

The following question, submitted to Chief Justice McADAM for opinion, May 19, 1887, by the attorneys of the vendor and vendee, under a contract for the sale of the property affected, may prove interesting.

### Question Submitted.

Mrs. Hoertel has entered into a contract with Felix Muldoon to purchase " all that certain lot, piece, or parcel of land with the building now thereon situate, and now

known by the street number 219 West Thirty-first Street, in the City of New York."

The premises are to be conveyed to her by "a proper deed, containing the general warranty, and the usual full covenants for the conveying and assuring to her the fee simple of the said premises, free from all incumbrance."

James R. Whiting was seized in fee simple of two lots, including the premises in question. In 1835 he conveyed the same as follows, by a full covenant warranty deed:

James R. Whiting and wife to William H. Freeland. Deed dated September 21, 1835, recorded, September 26, 1835, lib. 343, p. 109. Conveys the premises as described in the following mortgage, except that the deed contains no covenant against nuisances.

William H. Freeland to James R. Whiting. Mortgage dated September 21, 1835, recorded, September 26, 1835, lib. 190, p. 417. Mortgages as security for part of purchase money all these ten lots, pieces, or parcels of land known and distinguished on a certain map made by George B. Smith, one of the city surveyors, and dated June 8, 1825, filed in the office of the register in and for the city and county of New York, which said map is numbered 51, without a case, and which said lots are known on the said map by the numbers, 61, 62, 63, 64, 65, 38, 39, 40, 41, 42, and are bounded as follows, to wit, southwesterly by Thirty-first Street; northwesterly by lots Nos. 66 and 37, *northwesterly* by Thirty-second Street, and southeasterly by lots numbers 43 and 60 ; each lot containing in front and rear 25 feet, and in length on each side 98 feet and 9 inches, and also one-half of the street immediately in front of said lots on Thirty-first and Thirty-second Streets.

Immediately below the description follow these words, "*no part of the premises hereby conveyed is to be used for any trade, business, or purpose that would prove a nuisance to the owners of the adjoining premises.*"

The above mortgage was foreclosed by suit in the court

of chancery, the decree being filed December 13, 1842, and the premises were sold by the following deed.

Philo T. Ruggles, Master in Chancery, to Charles Whiting, master's deed, dated, March 1, 1843, recorded, March 3, 1843; liber 434, p. 47. Conveys the same ten lots by the same description *as above written.*

Charles Whiting, the above purchaser, conveyed the premises by full covenant warranty deed, dated December 31, 1858, *without any restrictions whatever,* and Mr. Muldoon, the present vendor, is the third of the intermediate grantees, all of whom derived title by full covenant warranty deeds *without* any restrictive clause soever.

The questions submitted are:

1. Does the clause at the end of the description in the above-mentioned mortgage constitute a valid covenant so as to run with the land?

2. Was this covenant extinguished by the foreclosure of the mortgage?

3. Could the master in chancery by his deed revive the covenant, so as to make it run with the land, and give the right to the present owners of the other nine lots to enforce it by injunction, and are the words "heirs and assigns" requisite and necessary to make the restriction a covenant running with the land?

4. Can Mrs. Hoertel, the present purchaser, obtain a good title to said premises (which is lot No. 61 on the said map) from Mr. Muldoon, free from any restrictions as to the use and occupation of the same by reason of the matters above set forth?

5. If the last question is answered in the negative, what will be the proper course for Mrs. Hoertel to take, and what if any would be the damages she could recover in an action to rescind or enforce the contract?

We desire to state herewith that it was and is the intention of Mrs. Hoertel to erect a bakery on the premises, with stables in the rear for the accommodation of her horses and wagons, which are numerous.

Covenant against Nuisance.

## Opinion.

The provision in the mortgage at the end of the description, that " no part of the premises conveyed is to be used for any trade, business or purpose that will prove a nuisance to the owners of the adjoining premises " is inoperative as a covenant running with the land, and (2) does not restrain the use of the property for any lawful object. These are the two propositions involved, and before discussing them it may be conceded that a covenant against nuisances (properly so called) constitutes an incumbrance sufficient to warrant a purchaser in rejecting a title (see cases collated in Van Derminden *v.* Essig, 2 *City Ct.* 38). *First.* The provision is inoperative as a covenant running with the land, because it is neither a condition nor a covenant contained in a grant of the land. It is not even a covenant by the mortgagee in respect to the property. The use remained in the mortgagor, and the provision is, at most, an implied promise on the part of the mortgagor not to use the property during his possession for any purpose that might prove a nuisance to the adjoining owners. It was a promise that would have passed to the *personal* representatives of the mortgagee and would have been enforceable by them. It was solely for the benefit of the mortgagee and his personal representatives, and would have been discharged by payment of the mortgage debt. No adjoining owner could have enforced it prior to or after payment of the mortgage. The mortgagee never owned the fee. He had no attribute of ownership in the land. A mortgage is a mere chose in action secured by a lien upon the land (Packer *v.* Rochester & S. R. R. Co., 17 *N. Y.* 283; Power *v.* Lester, 23 *Id.* 527; Trium, 54 *Id.* 604).

The foreclosure of the mortgage gave the mortgagee no ownership in the land. It merely merged the mortgage debt in the judgment. The purchaser at the master's sale acquired the estate of the mortgagor and the interest of the mortgagee. When the two interests

became united in the purchaser, the promise of the mortgagor terminated, and could be revived only by its continuance or recognition in subsequent grants by the purchaser. The purchaser did not revive or continue the promise, but extinguished it by the execution of grants conveying the fee of the property unrestricted.

The master in chancery could create no charge on the land, and the reiteration of the words added to the description created no limitation on the estate and imposed no valid restriction. The master was a mere *conduit* through whom the title of the mortgagor and interest of the mortgagee passed. He had no interest or estate of his own, and acted merely as the channel through which the interests of all parties passed to the purchaser at the judicial sale. The purchaser at this sale conveyed by full covenant warranty deeds, and his vendees acquired good title without any restriction whatever as to the use of the property. Covenants are not implied in conveyances (2 *R. S.* 6th ed. 119, § 161). Conditions leading to forfeiture or restricting the free use of property for lawful objects are strictly construed because they tend to impair and destroy estates. They will not be sustained by inference, nor unless the plain language of the covenant requires that punitive result (Woodworth *v.* Paine, 74 *N. Y.* 199. See also 64 *N. Y.* 33; 2 *How. Pr. N. S.* 391). I am clearly of opinion that the provision aforesaid is inoperative in respect to the title offered by Mr. Muldoon.

*Second.* The provision does not restrict the use of the property. It does not inhibit any particular trade, calling or purpose. It simply requires that the property shall not be used for any purpose that may "prove a nuisance to the owners of the adjoining premises." Why such a provision should be inserted in any conveyance is difficult to imagine, for the law, which is impressed upon every conveyance, inhibits such a use. No man can use his property in any manner that "may prove a nuisance

to the owners of the adjoining property," whether restricted by the language of the grant or not. The neighboring owners are not to determine whether the mode of occupation "proves a nuisance ; " this is left to the determination of the law.

The provision, therefore, does not fall within that class of cases where a particular use, not *per se* a nuisance, is especially inhibited in the conveyance. Such a provision is an incumbrance. A general prohibition against "unlawful" uses is not. My opinion is that the words contained in the mortgage and in the master's deed executed on the sale under foreclosure of the mortgage constitute no objection whatever to the title offered.

The title was passed on this opinion, the old house taken down, and a manufacturing establishment. put up covering the entire lot. No litigation followed.