HERMAN J. SINGLE, Respondent, *v.* EDWARD S. WHITMORE, JR., Appellant.

Argued October 5, 1954; decided December 2, 1954.

*Victor Levine for appellant.* I. The front of a corner lot is its narrow side. (*Clark* v. *New York Life Ins. & Trust Co.,* 64 N. Y. 33; *Schoonmaker* v. *Heckscher,* 171 App. Div. 148; *Rollins* v. *Armstrong,* 251 N. Y. 349.) II. The release of defendant from all future liability under the agreement sued upon is a complete defense to the action. (*Miller* v. *Schloss,* 159 App. Div. 704; *Farnham* v. *Farnham,* 204 App. Div. 573; *Celmar* v. *Feinborough Homes, Inc.,* 253 App. Div. 832.) III. The building line provisions of the zoning ordinance of the Village of North Syracuse have not been violated by defendant. IV. Plaintiff is not entitled to enjoin a claimed violation of the ordinance because it failed to show that he was being damaged thereby. (*Marcus* v. *Village of Mamaroneck,* 283 N. Y. 325; *Atkins* v. *West,* 222 App. Div. 308; *Simmons* v. *Pinsky,* 185 Misc. 549; *Buckley* v. *Baldwin,* 230 App. Div. 245.) V. The building line provision of the zoning ordinance is invalid. (*City of Utica* v. *Hanna,* 202 App. Div. 610; *Matter of Ballard* v. *Roth,* 141 Misc. 319.) VI. An injunction should have been denied to plaintiff because it will bear down heavily on defendant without benefiting plaintiff. (*Forstmann* v. *Joray Holding Co.,* 244 N. Y. 22.)

*Lawrence M. Rulison* for respondent. I. Defendant has violated the setback restriction as contained in the agreement. (*Clark* v. *New York Life Ins. & Trust Co.,* 64 N. Y. 33; *Schoonmaker* v. *Heckscher,* 171 App. Div. 148.) II. The dwelling constructed by defendant is in violation of the ordinances of the Village of North Syracuse. III. The release cannot operate as a defense to this action. (*Matter of Quick,* 147 Misc. 28; *Dworkin* v. *Dworkin,* 247 App. Div. 213; *Celmar* v. *Feinborough Homes,*

*Inc.,* 253 App. Div. 832; *Simon* v. *Simon,* 274 App. Div. 447.)
IV. Defendant could have easily complied with the provisions
of the agreement without injury to himself. V. Plaintiff should
be granted equitable relief. (*Forstmann* v. *Joray Holding Co.,*
244 N. Y. 22; *Neilson* v. *Hiral Realty Corp.,* 172 Misc. 408.)

CONWAY, J. For many years the plaintiff had owned a tract
of land known as the Single Farm in North Syracuse, New York.
In 1950 he surveyed and laid out for building lots certain por-
tions of the Single Farm, calling this area the Chestnut Knoll
Tract. On February 18, 1950, he and his wife executed two
written contracts with the defendant which gave the latter the
option to purchase certain specified lots in the Chestnut Knoll
Tract. One contract (Exhibit 4) dealt exclusively with Lots 19
to 27 in Block " B " and Lots 4 to 12 in Block " C " of the tract,
and the other contract, the general contract (Exhibit 14), dealt
with all the other lots in the tract with the specific exception of
the lots enumerated in Exhibit 4 and certain other lots reserved
to the plaintiff. Both instruments, apparently, were part and
parcel of one single transaction because the general contract
specifically excepts from its coverage the lots involved in Exhibit
4 for the reason that the latter, a separate agreement of the
same date, dealt only with those lots. Both contracts contained
substantially the same limitations, conditions and restrictions,
though the general contract also contained a requirement that
the plaintiff demolish a barn standing somewhere on the tract.
Both contracts contained an identical setback restriction which
reads as follows: " Buyer agrees that all dwellings constructed
by him shall have the front line of the foundation a minimum of
thirty-five feet (35) from the front of the lot upon which the
dwelling is constructed."

The contracts gave the defendant, as already stated, the right
to buy any or all of the lots numbered 19 to 27 in Block " B "
of the Chestnut Knoll Tract. In the preliminary map existing
at the time of the execution of those contracts, the western flank
of all of Lots 19 to 27 faced on Herman Drive. No other side of
any one of them abutted on a street, but they were closed in by
the adjoining lots of the block.

On June 14, 1950, certain of the lots in Block " B " were
redelineated and redefined and all of them were renumbered by
the plaintiff in order to facilitate the laying out of streets by

the Village of North Syracuse. A copy of the preliminary map and of the revised map is reproduced below and graphically illustrates the changes.

Exhibit 3 (Old Map)

Exhibit 5 (New Map)

As these maps show, the changes made by plaintiff resulted in a reduction of the number of lots in Block " B " and in a rearrangement and redelineation of the lots at the south end of Block " B ". As the plaintiff has stated, new Lot 12 (the only lot with which we are concerned here), whose position is different from that of old Lot 19 in that its long side rather than its short end fronts on Herman Drive, has taken the place of old Lot 19.

In January of 1951, the defendant demanded that plaintiff convey Lot 12 to him, and on March 9, 1951, the plaintiff and his wife deeded to the defendant the new Lot 12 by an instrument which contained no restrictions with regard to setback lines. Furthermore, it was stipulated by both parties that the filed map of the Chestnut Knoll Tract did not contain any setback lines, and that no setback restrictions were on file in the Onondaga County Clerk's office with reference to Lot 12.

In March, 1952, the defendant spoke to the plaintiff about a proposed house to be erected on Lot 12 of Block " B ". Defendant desired to construct that dwelling closer to Herman Drive than thirty-five feet. The plaintiff refused permission. On or about April 1, 1952, the defendant commenced building a house on Lot 12 closer than thirty-five feet from Herman Drive, and in a position running more or less diagonally from North to South across that lot, with the northwest corner of the building closer to Herman Drive than the southwest corner. As planned and constructed, there are steps and an entrance door, as well as large picture windows and the door of an attached garage, facing out toward Herman Drive. There is no entrance to the house on the side which faces toward Palmer Drive.

On April 29, 1952, the plaintiff commenced this action by service of a summons and verified complaint. At that time the foundation of the house on Lot 12 was incomplete, having been constructed to a height of only six or seven concrete blocks. Since then construction has continued towards completion.

Plaintiff sued to restrain defendant from constructing any building on Lot 12 within thirty-five feet of Herman Drive. By its decree, Special Term permanently restrained defendant from erecting any building on Lot 12 closer than thirty-five feet from Herman Drive, and, also, ordered defendant to move the entire newly constructed house, or remove so much thereof as necessary, in order that no portion of it be closer than thirty-five feet

from Herman Drive. The Appellate Division, Fourth Department, has affirmed, two Justices dissenting. The issue to be decided by us is whether or not defendant has violated the setback restriction.

At the time the 1950 contracts were executed, all of the lots in Block " B " which the defendant was entitled to purchase pursuant to Exhibit 4, including Lot 19, now Lot 12, had their *only* street frontage on Herman Drive. Therefore, that end of the lot, which was its short side, was the " front " within the intention of the parties. That being so, the restriction prohibited defendant from building within thirty-five feet of the short edge of the lot which faced on Herman Drive. Only about 22% of the lot was thereby rendered unusable for building purposes. If plaintiff be correct that the " front " end of Lot 12 is the long edge which abuts on Herman Drive — as a result of his unilateral action in revising the map — over 55% of the total area will be unavailable for building. That would mean, of. course, that plaintiff has imposed a more serious limitation upon the use of the land than was originally contemplated. In effect, he would, therefore, have conveyed less usable area than was provided for in the contract.

It is well established that a covenant restricting the use of land is to be construed strictly against the grantor who imposed it (*Reformed Prot. Dutch Church* v. *Madison Ave. Bldg. Co.,* 214 N. Y. 268), and that, before a serious interference with one's right of property is justified, something more than a doubtful right must be shown by the one seeking to impose such limitation. (*Clark* v. *New York Life Ins. & Trust Co.,* 64 N. Y. 33.) In the *Clark* case, we held that, since there was a doubt as to the true construction of the setback restriction there involved, the short side of the lot, rather than its long side, was to be treated as the " front ". Here, as we have said, the parties originally intended that the short side of the lot, rather than its long side, was to be treated as the " front ". There has been no subsequent bilateral modification of that intent.

Even if it were reasonable to construe the " front " of Lot 12 to be the long edge which abuts on Herman Drive, we would still reach the same conclusion, for it is established that where a restrictive agreement is reasonably capable of two constructions, the construction which limits the restriction, rather than

the one which extends it, should be adopted. (*Schoonmaker* v. *Heckscher,* 171 App. Div. 148, and cases cited, affd. 218 N. Y. 722.) The construction which we here give to the restrictive agreement is the more reasonable one.

Plaintiff contends that the "front" of Lot 12 is that side abutting on Herman Drive since the building erected thereon faces on that street. That argument is without merit, however, for the physical position in which the house is set does not determine which side of the lot is the "front". In *Rollins* v. *Armstrong* (251 N. Y. 349) we held that the front of a building is not determined by the position in which that building is erected on the lot. So, too, the mere position in which a building is placed cannot determine the "front" of the land.

To entitle himself to the extraordinary equitable relief of injunction, plaintiff must show that defendant was *clearly* obligated by the setback restriction. Not only has he failed to do this, but he has similarly failed to demonstrate any present or threatened damages. Indeed, the uncontradicted testimony of the real estate expert Jolly is to the effect that the house as built enhances the value of the other lots and the property in the surrounding area.

Plaintiff further argues that there was a setback restriction imposed on the use of Lot 12 by reason of a zoning ordinance of the Village of North Syracuse. By its terms, however, that ordinance applied only where 60% of the lots in any block are occupied by houses. According to plaintiff's own Exhibit 5 (the revised map of the Chestnut Knoll Tract), only eleven lots including Lot 12 of the twenty-one numbered lots in Block "B" were occupied. This is slightly more than 50%, hence the ordinance is, by its terms, inapplicable.

There is another reason for reversal: on the day after the deed to Lot 12 had been transferred, the parties executed what purported to be a release. Although defendant was entitled by Exhibit 4 to buy no more lots after he had purchased Lot 12, both he and the plaintiff were still obligated by that instrument to perform certain duties, if indeed those duties survived the delivery of the deed, including the following: (1) the houses were to be constructed under defendant's sole management and supervision, (2) plaintiff was actively to assist in expediting the

installation of utilities, and (3) the houses were to be built not closer than thirty-five feet from the " front " of the lot.

The wording of that release, so far as it is applicable, is as follows:

" * * * whereas said parties entered into a written agreement on the 18th. day of February, 1950 for the sale and purchase of the lots of the Chestnut Knoll Tract, Town of Clay, Village of North Syracuse, New York.

" And whereas said parties now desire to release each other from *any future liability arising from said agreement*.

" Now therefore, the parties to said agreement * * * do hereby release each other * * * of and from *all future liability* * * * *covenants,* contracts, controversies, agreements, promises * * * *claims and demands whatsoever, in law or in equity*." (Emphasis supplied.)

Those words are certainly clear and unmistakable, hence effect must be given to the intent of the parties as indicated by the language they employed. (Cf. *Matter of Western Union Tel. Co. [American Communications Assn.]*, 299 N. Y. 177.) There may have existed obligations and limitations which bound the parties even after the last lot involved in Exhibit 4 had been conveyed; and, in our judgment, the only reasonable construction of the above-quoted release is that it absolved the signatories from the duties and restrictions listed above.

The judgment of the Appellate Division and that of Special Term should be reversed, and the complaint dismissed, with costs in all courts.

LEWIS, Ch. J., DESMOND, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur.

Judgments reversed, etc.