BUFFALO GRAVEL CORPORATION et al., Plaintiffs, *v.* GUY B. MOORE, as District Attorney, etc., Defendant.

Supreme Court, Erie County, February, 1922.

Equity — intervention in criminal action — criminal law — combination of sand and gravel corporations in interest of each — indictment for violation of General Business Law, §§ 340, 341, and Laws of 1918, chap. 490, amending said section 340 — statutes of 1918 authorizing farmers, etc., to combine skill and capital, etc., are valid — equal protection of the laws — action to restrain prosecution of indictment — demurrer to complaint overruled.

It is manifest from the decision in *Municipal Gas Co.* v. *Public Service Com.*, 225 N. Y. 89, that the court sanctions the intervention of equity in a criminal action.

By reason of the rising cost of labor following the commencement of the World War, the increase of the cost of coal and other fuel, the duplication of facilities for handling their products, several producing corporations engaged in procuring sand and gravel and selling the same in the vicinity of Buffalo, N. Y., each having a plant, equipment and yard for the handling of said material and delivering it to customers, came to the conclusion that a method of co-operation or integration or unification of some or all of the business was necessary for the protection of their investments which were large, and to secure their customers, and that a mere price-raising and price-fixing combination would not meet the situation, conferred together and evolved a plan of operation by which a new corporation (plaintiff, Buffalo Gravel Corporation) was organized, and which took over the business of unloading, storing, marketing and distributing the entire output under a contract which would limit the cost plus upkeep, plus a fair profit. The new corporation also took over the leases of the producing corporations and purchased their equipment and since April 1, 1919, has carried on the business, to wit, the purchase of all the gravel produced by the others and the sale and distribution thereof, and the other corporations have not since that date engaged in the sale and distribution of their own products. The resulting benefits and advantages have been a reduction in selling expenses, more efficient service and a consequent low price. Nevertheless, a legislative committee spread upon its records the statement that the contract with the Buffalo Gravel Corporation constituted a combination in restraint of trade and recommended to the district attorney of Erie county, the defendant herein, that all of said corporations, the plaintiffs herein, be prosecuted for such alleged offense. The complaint in an action to enjoin the defendant from prosecuting an indictment returned by a grand jury in attendance upon an extraordinary term of this court directed to be called by the governor of the state upon the application of the defendant, after alleging the foregoing facts further alleged that the indictment charged plaintiffs with violation of law by the making of said agreement and the doing of any act in carrying out the same; that such action by defendant was unauthorized and causes irreparable injuries to plaintiffs and their property rights and it was specifically alleged that the statutes alleged to have been violated (General Business Law, §§ 340, 341; Laws of 1918, chap. 490, amending said § 340) denied to these plaintiffs the equal protection of the

laws in violation of the Fourteenth Amendment to the Constitution of the United States and deprived them of their liberty and property in violation of article 1, section 6, of the Constitution of the state of New York and judgment was demanded that defendant be restrained from prosecuting the indictment and for a determination that said sections of the General Business Law are unconstitutional and void. *Held*, upon overruling a demurrer to the complaint with leave to defendants to plead within twenty days, that the statutes of 1918 authorizing farmers, etc., to combine their skill and capital, collect their products, fix prices and monopolize the trade in farm, garden, fruit and live stock products, are valid enactments and that any former statutes which are contrary thereto must give way, and as a necessary consequence all other lines of trade are entitled to the equal protection of the law.

ARGUMENT of demurrer to complaint.

*Penney, Killeen & Nye*, for plaintiffs.

*James O. Moore*, as *amicus curiæ*.

*Guy B. Moore*, defendant in person.

POOLEY, J. Issue of law raised by demurrer to the complaint in an action in equity to enjoin defendant from prosecuting indictments against the plaintiffs. The plaintiffs by their complaint allege that the companies are corporations and each of the individuals named is a director of one or more of said corporations, engaged in procuring sand and gravel and selling the same in Buffalo and vicinity; that the said companies, other than the Buffalo Gravel Corporation, are producing corporations and each has plant, equipment and yards for the handling of said material and delivering it to customers, involving a large investment; that by reason of the rising cost of labor following the commencement of the World War, the large increase of cost of coal and other fuel, the duplication of facilities to handle their products, the necessity of eliminating waste, etc., the said corporations came to the conclusion that a method of co-operation or integration, or unification of some or all of the business was necessary for the protection of their investments and to serve their customers and that a mere price-raising and price-fixing combination would not meet the situation; that they conferred together, engaged counsel of high standing and evolved a plan of operation by which a new corporation was organized (plaintiff, Buffalo Gravel Corporation) for the purpose of taking over the business of unloading, storing, marketing and distributing the entire output, under a contract or arrangement which would limit the cost plus upkeep, plus a fair profit; that this arrangement was consummated about March 21, 1919, the Buffalo Gravel Corporation took over the proposed business, took over leases of the producing corporations and purchased their equipment, and since April 1, 1919, has carried on the business, to wit, the purchase of all the gravel produced by the others, and

the sale and distribution thereof, and that the others have not since then engaged in the selling or distribution of their own product; that the resulting benefits and advantages have been a reduction in selling expenses, more efficient service and a consequent low price; that nevertheless a legislative committee spread upon its records the statement that the contract of March 21, 1919, constituted a combination in restraint of trade and recommended to the district attorney of Erie county (defendant herein) that these plaintiffs be prosecuted for such alleged offense; that upon application of defendant, the governor of the state directed the calling of an extraordinary term of this court, with a grand jury, beginning July 25, 1921; that said grand jury returned an indictment against these plaintiffs charging violation of law, by the making of said agreement of March 21, 1919, and the doing of any act in carrying out the same; that said acts carry penalties for each offense; that such action by the defendant is unauthorized and causes irreparable injury to the plaintiffs and their property rights, and they charge specifically that the statutes in question deny to these plaintiffs the equal protection of the laws in violation of amendment XIV of the Constitution of the United States, and deprive them of their liberty and property in violation of article I, section 6 of the Constitution of the state of New York.

They demand judgment restraining defendant from prosecuting the indictment and a determination that sections 340 and 341 of the General Business Law of the state are unconstitutional and void.

The demurrer of the defendant, admitting the facts and charging that they do not constitute a cause of action, presents two propositions for determination: *First*, whether or not this court of equity may entertain and determine the issues raised; and *second*, if it may so entertain and determine, whether or not the statutes in question are violative of the rights of the plaintiffs guaranteed to them by the National and State Constitutions.

Upon the first proposition, it is the settled law of this state that our courts of equity will not interfere in the prosecution of the criminal law (*Delaney* v. *Flood*, 183 N. Y. 323) nor intervene when there is adequate remedy at law.

But statutes have been in recent years enacted which involve restraints upon business methods and carrying penalties for violation, and in some instances declaring violations criminal acts punishable by fines and imprisonments. They are the outgrowth of the advancement of business, the combination of capital, the evolution from primitive to collective methods, and the law must follow and safeguard and protect all rightful acts and prevent

their infringement. So, in *Municipal Gas Co.* v. *Public Service Comm.*, 225 N. Y. 89, our Court of Appeals reviews this proposition, and while recognizing the validity of the reasoning of former cases, including *Delaney* v. *Flood, supra,* declares the advanced thought that in a proper case equity will act, saying: "Many of the most distinctive features of equity jurisdiction are present (*Board of Supervisors Sar. Co.* v. *Deyoe,* 77 N. Y. 219, 226; *Nat. Park Bank* v. *Goddard,* 131 N. Y. 494, 502; *Emp. Eng. Corp.* v. *Mack,* 217 N. Y. 85, 94). There is the avoidance of multiplicity of actions. There is the saving of waste and friction. There is the opportunity to analyze accounts so complex and vast as to be unintelligible to juries (*Ex parte Young,* 209 U. S. 123, 163, 164). There is protection against penalties that crush and against losses that cripple. * * * Undoubtedly, the plaintiff has some remedy at law. The decisive point is that it is not as complete or efficient as the remedy in equity (*Walla Walla City* v. *Walla Walla Water Co.,* 172 U. S. 1, 12)."

Thus is defined the meaning of the term adequate remedy at law. The plaintiffs here may, in the criminal prosecution, move to dismiss the indictment, they may stand trial and defeat it, but these remedies may be inadequate, and if followed, might result in vindication on the criminal charge, but in "impairment, if not destruction to their business and property rights."

The case of *Municipal Gas Co.* v. *Public Service Comm., supra,* was a civil action, and the court says (p. 102): "This is no attempt by equity to restrain the enforcement of the criminal law, even if we were to assume that such an objection would invariably be fatal (*Ex parte Young,* at p. 162). The very purpose of the suit is a declaration of the plaintiffs' rights which will enable it to shape its conduct in conformity to law. It is another answer, though a narrower one, that the penalties are civil (*Consol. Gas Co.* v. *City of New York,* 157 Fed. Rep. 849; *Ten. House Dept. N. Y.* v. *McDevitt,* 215 N. Y. 160, 168; Code Civ. Pro. sec. 1962)."

The question whether or not a criminal case may present such a situation as would justify the intervention of equity has not arisen in our state court heretofore, but from the reasoning of this latter case quoted from, as well as from the citation therein of many cases in the federal courts, it is quite manifest that the Court of Appeals sanctions such intervention.

In *Ex parte Young,* 209 U. S. 123, the Minnesota legislature enacted a statute fixing freight and passenger rates of railroads. Stockholders of railroads brought actions in equity in the United States Circuit Court, against railroads in which they were stockholders, against the railroad and warehouse commission, and against the attorney-general of the state to enjoin the enforcement of the

statute, for the reason that the acts were violative of the Constitution. The attorney-general was enjoined, disobeyed the order and was punished for contempt. He made application to the United States Supreme Court to file petition for writs of habeas corpus and certiorari.

The decision first reviews the constitutional question and then (p. 149) " The question that arises is whether there is a remedy that the parties interested may resort to, by going into a federal court of equity, in a case involving a violation of the federal Constitution, and obtaining a judicial investigation of the problem, and pending its solution obtain freedom from suits, *civil or criminal,* by a temporary injunction, and if the question be finally decided favorably to the contention of the company, a permanent injunction restraining all such actions and proceedings."

The opinion then discusses the jurisdictional question, objection being that the suit is in effect against the state and " that the injunction against the Attorney-General illegally prohibits State action, either criminal or civil, to enforce obedience to the statutes of the State." After a review of many cases illustrative of the various phases of the question, the court concludes (p. 159): " The answer to all this is the same as made in every case where an official claims to be acting under the authority of the State. The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a State official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional."

And at page 161: " It is further objected (and the objection really forms part of the contention that the State cannot be sued) that a court of equity has no jurisdiction to enjoin criminal proceedings, by indictment or otherwise, under the state law. This, as a general rule, is true, but there are exceptions * * *. In *Dobbins* v. *Los Angeles,* 195 U. S. 223, 241, it is remarked by Mr. Justice Day, in delivering the opinion of the court, that ' it is well settled that where property rights will be destroyed unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a court of equity.' "

At page 165 the question of adequate remedy at law is discussed, concluding: " We do not say the company could not interpose this defense in an action to recover penalties or upon the trial of an indict-

ment (*St. Louis & S. F. Ry. Co.* v. *Gill*, 156 U. S. 649) but the facility of proving it in either case falls so far below that which would obtain in a court of equity that comparison is scarcely possible. To await proceedings against the company in a state court grounded upon a disobedience of the act, and then, if necessary, obtain a review in this court by writ of error to the highest state court, would place the company in peril of large loss and its agents in great risk of fines and imprisonment if it should be finally determined that the act was valid. This risk the company ought not to be required to take.''

It is clear that equity may intervene in a proper case.

The second proposition raises the question of the constitutionality of certain enactments of the state legislature.

The statutes involved are sections 340 and 341 of General Business Law (1909), and the amendment to section 340 by chapter 490, Laws of 1918.

Section 340 (1909) declares that every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale of any commodity of common use may be created, or whereby competition in the supply or price of any such commodity is or may be restrained or prevented, is against public policy, illegal and void.

Section 341 provides that any such act is a misdemeanor, and upon conviction thereof a natural person shall be punished by a fine not exceeding $5,000 or by imprisonment for not longer than one year, or both, and a corporation by a fine not exceeding $20,000.

By the amendment of 1918 there was added to section 340 the following clause:

'' The provisions of this article shall not apply to co-operative associations, corporate or otherwise, of farmers, gardeners or dairymen, including livestock farmers and fruit growers, nor to contracts, agreements or arrangements made by such associations.''

Section 580 of the Penal Law provides that if two or more persons conspire to commit any act injurious to trade or commerce, each of them is guilty of a misdemeanor.

In 1918 section 582 of the Penal Law was amended by chapter 491, Laws of 1918, by adding the clauses: '' Associations, corporate or otherwise, of farmers, gardeners or dairymen, including livestock farmers and fruit growers, engaged in making collective sales or marketing for its members or shareholders of farm, orchard or dairy products produced by its members or shareholders are not conspiracies. Contracts, agreements, arrangements or combinations heretofore or hereafter made by such associations or the members, officers or directors thereof in making such collective

sales and marketing and prescribing the terms and conditions thereof are not conspiracies and they shall not be construed to be injurious to trade or commerce."

Again in 1921 section 340 of the Business Law was further amended (Laws of 1921, chap. 712), making it applicable to " any article or product used in the conduct of trade, commerce or .manufacture " in addition to commodities of common use, and that part of the section relating to farmers, gardeners and dairymen was enacted without change.

By chapter 655, Laws of 1918, article 13A was added to the Membership Corporations Law, providing for the organization of co-operative marketing associations.

The Agricultural Law, appearing first as chapter 338 of the Laws of 1893, was a revision and codification of all laws on the subject theretofore enacted, and again in 1909, chapter 9 being article 1 of the Consolidated Laws.

Reading these various statutes together, it is manifest that the legislature had entered upon a far-reaching and comprehensive policy in the interest of farmers, gardeners, dairymen, livestock farmers and fruit growers. These industries constitute a large part of the business of the people of the state and year by year theretofore laws had been enacted tending toward this ultimate policy for their protection and betterment. A study of the various bureaus is instructive in showing the development.

This constitutes a decided change in the policy of the state and the making of statutes consistent with and in conformity to such change, in that while prior to these amendments all combinations effecting monopoly or restraining competition were illegal, thenceforth farmers, gardeners, dairymen, livestock farmers and fruit growers were permitted to combine, and such acts, condemned in all others, were made legal.

It is significant also that the statute provided protection of farmers, etc., from combinations " heretofore or hereafter made," so that at no time were such acts illegal, and that the amending act must be construed as part of the original statute. *People ex rel. Huntington* v. *Crennan,* 141 N. Y. 239, 244.

The legislature of the state is supreme in enacting its laws and framing its policy, restrained only by the provisions of the Constitution of the state and of the United States. Manifestly it may from time to time alter its policy within the same restraints.

It is quite apparent that in 1918 such a change was made, and we must now consider the effects.

It is contended by the plaintiffs that, while the legislature was within its powers in authorizing farmers, etc., to combine, it could

not legally grant such rights to one group or class and exclude all others from their benefits, and that it could not legalize the acts of one class or group in the community while declaring it a misdemeanor for all others to do the same thing. The defendant contended that while this may be so, the amendments of 1918, making this class distinction, may be overruled, leaving the original statute in full force, carrying with it its prohibitions and penalties.

But it is contended that the enactments of 1918 were made with full knowledge of the then existing law, and that, notwithstanding, the legislature intended to change the policy, even if it resulted in annulling the statutes against monopoly and restraint of competition. If the amendments are declared illegal, the farmers, etc., are subject to the same laws as all other groups or classes. If the amendments are legal, then it is urged that the same rights and privileges should be accorded to all.

The Fourteenth Amendment to the Constitution of the United States provides, " nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The amendments of 1918 do not in terms deny anything. They do not say that all classes or groups of business men except farmers, etc., are denied the right to combine and that farmers, etc., may. But the statute as it stood before the amendment was applicable to all. The amendments provided that the farmers, etc., may do those things which were theretofore illegal, and reading the statutes ·as amended with the same force and effect if framed for the first time, they in effect provide that farmers, etc., may combine and effect monopoly, restrain competition and fix prices, but that all others are denied this privilege.

The principles involved have been passed upon in both state and federal courts.

*People* v. *Windholz,* 92 App. Div. 569, is the case involving the law relative to the adulteration of cider vinegar, and the statute involved was held to be discriminating and in conflict with the Constitution.

*Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, was a case very similar to the one now before us, and the court says (p. 564): " We conclude this part of the discussion by saying that to declare that some of the class engaged in domestic trade or commerce shall be· deemed criminals if they violate the regulation prescribed by the state for the purpose of protecting the public against illegal combinations formed to destroy competition and to control prices, and that others of the same class should not be bound to regard these regulations, but may combine their capital, skill or acts to destroy

competition and to control prices for their special benefit, is so manifestly a denial of the equal protection of the laws, that further or extended argument to establish that position would seem to be unnecessary."

The court then discusses the proposition that the obnoxious sections might be disregarded and the valid sections left intact, but concludes: " If the latter section be eliminated as unconstitutional, then the act, if it stands, will apply to agriculturists and live stock dealers. Those classes would in that way be reached and fined, when, evidently, the legislature intended that they should not be regarded as offending against the law even if they did combine their capital, skill or acts in respect to their products or stock in hand. Looking, then, at all the sections together, we must hold that the legislature would not have entered upon or continued the policy indicated by the statute unless agriculturists and live stock dealers were excluded from its operation, and thereby protected from prosecution. The result is that the statute must be regarded as an entirety, and in that view it must be adjudged to be unconstitutional as denying the equal protection of the laws to those within its jurisdiction who are not embraced by the ninth section."

The court sought to determine the intent of the legislature, and when this could not be given effect, condemned the entire statute. But in the case before us the statutes in question were enacted subsequent to this decision in the *Connolly* case which must have been well known to the legislature, and hence the policy becomes fixed, notwithstanding the fact that the former law against monopoly, etc., thereby becomes inoperative.

The legislature then, having established this new policy, we have an irreconcilable conflict.

In McKinney's Consolidated Laws of New York, book 1, section 177, it is said: " If, without violating the established canons of interpretation, the courts can so construe two statutes that they will be in harmony, it is their duty to give them such construction But, if the statutes are in irreconcilable conflict, it is likewise the duty of the courts to declare the abrogation of the earlier. Every statute is by implication a repeal of all prior statutes, so far as it is repugnant and contrary thereto, for the latest constitutional enactment must be deemed the law to which all earlier statutes must submit so far as conflict exists."

The conclusion is reached that the statutes of 1918 authorizing farmers, etc., to combine their skill and capital, collect their products, fix prices and monopolize the trade in farm, garden, fruit and livestock products, are valid enactments, and that any former statutes which are contrary thereto must give way. It

Supreme Court, February, 1922.                    [Vol. 118

follows that all other lines of trade are entitled to the equal protection of the laws.

The demurrer is overruled with the right to defendant to plead over within twenty days.

Ordered accordingly.