THE STANDARD ENGRAVING CO., INC., Respondent, *v.* EDWARD J. VOLZ, Individually and as President of the NEW YORK PHOTO-ENGRAVERS' UNION No. 1, and WILLIAM DOERR, Individually and as Business Agent of the NEW YORK PHOTO-ENGRAVERS' UNION No. 1, Appellants.

First Department, April 21, 1922.

Statutes — original statute not affected by separable void amendment — monopolies and combinations — interference by trade union with prices charged by photo-engraving concern unlawful under Donnelly Anti-Trust Act (General Business Law, §§ 340, 341, as amended by Laws of 1921, chap. 712) and may be restrained by injunction.

Sections 340 and 341 of the General Business Law, known as the Donnelly Anti-Trust Act, making contracts for monopoly illegal and void, are in full force and effect regardless of the unconstitutional amendment thereto made by chapter 490 of the Laws of 1918 which exempted from the operation of the original act " co-operative associations, corporate or otherwise, of farmers, gardeners or dairymen, including live stock farmers and fruit growers " and contracts made by such associations, as such objectionable amendment is not an integral part of the original act and may be disregarded.

Accordingly, since a photo-engraving is an " article or product used in the conduct of trade, commerce or manufacture," within the purview of said statute, as amended by chapter 712 of the Laws of 1921, any attempt on the part of defendants, officers of a photo-engravers' union, to interfere with the management of the business of plaintiff, a photo-engraving concern, with respect to the prices at which it may sell its product, is unlawful and may be restrained by injunction.

APPEAL by the defendants, Edward J. Volz and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of July, 1921, restraining them *pendente lite* from declaring a strike in plaintiff's shop; from causing plaintiff's employees to quit and from contriving or conspiring by any scheme or device to fix prices at which the plaintiff shall sell or dispose of photo engravings.

*Phillips, Mahoney & Leibell* [*Jeremiah T. Mahoney* of counsel; *Valentine Taylor* and *J. Archer Hodge* with him on the brief], for the appellants Edward J. Volz and William Doerr.

*Brodek & Raphael* [*Charles A. Brodek* of counsel], for the respondent.

*Morris, Plante & Saxe* [*Martin Saxe* of counsel; *Merton E. Lewis* with him on the brief], for the Publishers' Association of New York City, as *amici curiæ.*

*Penney, Killeen & Nye* [*Henry W. Killeen* of counsel; *James O. Moore* and *John A. Kelly* with him on the brief], as *amici curiæ.*

GREENBAUM, J.:

The case does not involve any question of boycotting or picketing or any acts of violence. The salient facts as disclosed by the moving and opposing papers are practically undisputed. It appears that the plaintiff is engaged in the photo-engraving industry in the borough of Manhattan, city of New York, and is a member of the Photo-Engravers' Board of Trade of New York, Inc., an organization composed of employing photo-engravers in that city; that the New York Photo-Engravers' Union No. 1, of which defendants are officers, is an unincorporated association of journeymen photo-engravers with a membership of approximately 1,900, being about ninety per cent of the competent journeymen photo-engravers in the city of New York, and is affiliated with the International Photo-Engravers' Union of North America.

On or about January 8, 1921, an agreement was made and entered into between the Photo-Engravers' Board of Trade of New York, Inc., and the defendant union, which prescribed wages and working conditions and contained a clause under which the members of the board of trade agreed to employ none but union members in good standing, thus making the plaintiff's shop what is commonly known as a "closed shop." This agreement went into effect as of January 1, 1921, and was to continue in force until December 31, 1921. It happened that in February, 1918, a decision was rendered by the Court of General Sessions of the Peace in and for the County of New York, reported in *People* v. *Epstean* (102 Misc. Rep. 476) to the effect that the General Business Law (§§ 340, 341), popularly known as the Donnelly Anti-Trust Act, was intended to prevent restraint of trade and the creation of monopoly in articles or commodities of common use, and that photo-engraving was not within the scope of the enactment inasmuch as it is a service and that " the defendants are not prohibited by the statute from dictating the terms on which they shall render their services, since their labors cannot in any proper sense be said to result in the production or sale of an article or commodity in common use." An appeal from that decision to this court was dismissed (190 App. Div. 899).

After the announcement of the decision in *People* v. *Epstean* (*supra*) the New York Photo-Engravers' Union No. 1 established and adopted a minimum selling base for photo-engravings and notified the plaintiff and the other members of the Photo-Engravers' Board of Trade of New York, Inc., of its adoption of the minimum scale of selling prices of photo-engravings coupled with a further notice " that a sale below said so-called minimum selling base was a detriment to the members of the union and was a practice that

would be stopped by the withdrawal of members of the union from the employment of such concerns as sell below the said so-called minimum selling base." This minimum selling base was modified March, 1920, by the union, and due notice of the adoption of the modified selling base was given by the union to the plaintiff and to other employing photo-engravers in the city of New York.

It also appears that some employing photo-engravers disregarded the minimum selling base and their shops were " struck " by the defendant union. Many of these strikes were subsequently adjusted upon agreement on the part of the employer to conform to the said minimum selling base and to pay its employees full wages for the time of the duration of the strike.

By chapter 712 of the Laws of 1921, in effect May 13, 1921, the so-called Donnelly Anti-Trust Act (General Business Law, §§ 340, 341) was amended to bring within the purview thereof " any article or product used in the conduct of trade, commerce or manufacture."

Until the enactment of the aforesaid amendment, plaintiff conformed to the minimum selling base. Thereafter, however, plaintiff has disregarded the said minimum selling base by selling its product at a lower price where necessary, in order to meet the competition of various photo-engraving concerns in the city of New York, who since the said amendment of the law sold photo-engravings secretly and by surreptitious arrangements with customers, below the minimum selling base fixed by defendant union.

On May 17, 1921, plaintiff notified the defendant union that since the amendment of the Donnelly Anti-Trust Act " your minimum selling base is illegal," and in view of such fact it would be necessary for plaintiff to absolutely disregard and to continue to disregard the said minimum selling base.

The motion papers are replete with copies of letters sent and of orders adopted by the defendant union, in which it was stated that violations of the minimum selling base by plaintiff would subject it to a stoppage of its business.

It is thus undisputed that the defendant union is threatening plaintiff and the members of the Photo-Engravers' Board of Trade of New York, Inc., with coercive measures if they sell their products at prices below a minimum scale of prices, to wit, the penalty of being deprived of their employees, and thus in effect preventing them from continuing in the business of manufacturing photo-engravings. Defendants justify their acts on the ground that they are acting within the law. We are thus required to determine whether the acts of the defendants of which the plaintiff complains are lawful or whether they are unlawful and violative of sections 340 and 341 of the General Business Law.

Those sections were originally enacted by chapter 383 of the Laws of 1897, and amended in some minor respects by chapter 690 of the Laws of 1899, and read as follows:

" § 340. Contracts for monopoly illegal and void. Every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this State of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this State in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this State of the manufacture, production or sale of any such article or commodity, the free pursuit in this State of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void.

" § 341. Penalty. Every person or corporation, or any officer or agent thereof, who shall make or attempt to make or enter into any such contract, agreement, arrangement or combination, or who within this State shall do any act pursuant thereto, or in, toward or for the consummation thereof, wherever the same may have been made, is guilty of a misdemeanor, and on conviction thereof shall, if a natural person, be punished by a fine not exceeding five thousand dollars, or by imprisonment for not longer than one year, or by both such fine and imprisonment; and if a corporation, by a fine of not exceeding *five* thousand dollars." By chapter 633 of the Laws of 1910, section 341 was amended so as to provide a fine against a corporation " of not exceeding *twenty* thousand dollars." The section was then further amended by adding thereto the following: " An indictment based on a violation of any of the provisions of this section must be found within two years after its commission."

By chapter 490 of the Laws of 1918 section 340 was amended by the addition of the following provision: " The provisions of this article shall not apply to co-operative associations, corporate or otherwise, of farmers, gardeners or dairymen, including live stock farmers and fruit growers, nor to contracts, agreements or arrangements made by such associations."

By chapter 712 of the Laws of 1921 the Legislature, for the purpose of extending the scope of the act and clarifying the meaning of section 340, due to the interpretation of the act in the *Epstean* decision, amended section 340 to read as follows:

" § 340. Contracts for monopoly illegal and void. Every contract, agreement, arrangement or combination whereby

" A monopoly in the manufacture, production or sale in this State *of any article or product used in the conduct of trade, commerce*

*or manufacture* or of any article or commodity of common use is or may be created, established or maintained, or whereby

" Competition in this State in the supply or price of any such article, product or commodity is or may be restrained or prevented, or whereby

" For the purpose of creating, establishing or maintaining a monopoly within this State of the manufacture, production or sale of any such article, product or commodity, the free pursuit in this State of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void.

" The provisions of this article shall not apply to cooperative associations, corporate or otherwise, of farmers, gardeners, or dairymen, including live stock farmers and fruit growers, nor to contracts, agreements or arrangements made by such associations." (Italics ours.)

There seems to be no dispute between the parties that a photo-engraving is an " article or product used in the conduct of trade, commerce or manufacture," and hence comes within the statute.

As we understand the position of the appellants it is that the provisions of the Donnelly Anti-Trust Act are no longer in force, having been annihilated by the legislative enactment of chapter 490 of the Laws of 1918, which exempted from the operations of the original act, as re-enacted in 1909 and amended in 1910, " co-opera-tive associations, corporate or otherwise, of farmers, gardeners or dairymen, including live stock farmers and fruit growers, nor to contracts, agreements or arrangements made by such associations."

In other words, defendants contend that the effect of this amend-ment to the general law enacted about twenty-one years before the 1918 amendment was passed was to vitiate all of the provisions of the original act and all prior amendments thereto made.

Their main reliance in support of that contention is the case of *Connolly* v. *Union Sewer Pipe Co.* (184 U. S. 540). We are not in accord with defendants' interpretation of the majority opinion written in that case. The court there had before it the construction of what was known as the Anti-Trust Statute of Illinois, passed in 1893 (Ill. Laws of 1893, pp. 182, 184, § 9), and the question before it was whether that statute was " inconsistent with the Constitu-tion of the United States, by reason of the fact that by the ninth section it declares that ' the provisions of this act shall not apply to agricultural products or live stock while in the hands of producer or raiser.' "

We can best state what the court held by quoting from its opinion as follows (Pp. 564, 565): " We conclude this part of the discussion

by saying that to declare that some of the class engaged in domestic trade or commerce shall be deemed criminals if they violate the regulations prescribed by the State for the purpose of protecting the public against illegal combinations formed to destroy competition and to control prices, and that others of the same class shall not be bound to regard those regulations, but may combine their capital, skill or acts to destroy competition and to control prices for their special benefit, is so manifestly a denial of the equal protection of the laws that further or extended argument to establish that position would seem to be unnecessary. We therefore hold that the act of 1893 is repugnant to the Constitution of the United States, *unless its ninth section can be eliminated, leaving the rest of the act in operation. The principles applicable to such a question are well settled by the adjudications of this court. If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand and be enforced. But if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the Legislature, then the entire statute must be held inoperative.* The first section of the act here in question embraces by its terms all persons, firms, corporations or associations of persons who combine their capital, skill or acts for any of the purposes specified, while the ninth section declares that the statute shall not apply to agriculturalists or live stock dealers in respect of their products or stock in hand. If the latter section be eliminated as unconstitutional, then the act, if it stands, will apply to agriculturalists and live stock dealers. Those classes would in that way be reached and fined, when, evidently, the Legislature intended that they should not be regarded as offending against the law even if they did combine their capital, skill or acts in respect of their products or stock in hand. *Looking then at all the sections together, we must hold that the Legislature would not have entered upon or continued the policy indicated by the statute unless agriculturalists and live stock dealers were excluded from its operation and thereby protected from prosecution.* The result is that the statute must be regarded as an entirety, and in that view it must be adjudged to be unconstitutional as denying the equal protection of the laws to those within its jurisdiction who are not embraced by the ninth section." (Italics ours.)

It must be borne in mind that in the *Connolly Case* (*supra*) the court was construing an original act which contained an objectionable clause exempting certain classes of the community from its operations. The situation before us is that the original act without exemptions was passed years before the obnoxious amendment of 1918. The Legislature of 1918 was thus dealing solely with an

amendment and not an original act. It cannot be successfully claimed that the Legislature would have repealed the original Donnelly Anti-Trust Act if the amendment excluding certain classes of the community from the operation of that law had not been passed. In other words, the reasons which impelled the United States Supreme Court to hold that the statute under its review must be taken in its entirety have no application to the situation in the instant case. There is abundant authority for the support of the proposition that an objectionable amendment does not destroy the original act. The Supreme Court of Illinois in the case of *People* v. *Butler Street Foundry* (201 Ill. 236) had occasion to consider the *Connolly Case* (*supra*), stating in reference thereto at page 257:
" In the case of *Connolly* v. *Union Sewer Pipe Co.*, *supra*, the Supreme Court of the United States had before it for consideration the act of 1893, and it was there held that the entire act was unconstitutional and void, as being in conflict with the provisions of the Fourteenth Amendment to the Constitution of the United States, in this: that it improperly discriminated in favor of agricultural products or live stock in the hands of the producer or raiser. If the act of 1893 is void as being in conflict with the Federal Constitution, as it, in view of the decision in *Connolly* v. *Union Sewer Pipe Co.*, *supra*, must be held to be, it seems too plain for argument that it could not have worked the repeal of the act of 1891." (Citing *Raymond* v. *Hartford Fire Ins. Co.*, 196 Ill. 329.) Continuing the court said:
" The amendment of 1897 to the act of 1891 was in the form of a proviso to section 1 of that act and reads as follows: ' *Provided, however*, that in the mining, manufacture or production of articles of merchandise, the cost of which is mainly made up of wages, it shall not be unlawful for persons, firms or corporations doing business in this State to enter into joint arrangements of any sort, the principal object or effect of which is to maintain or increase wages.' Under the decision in the *Connolly Case* it is clear that this amendment is unconstitutional and void, as being an unlawful discrimination in favor of the persons sought to be exempted by the amendment from the operation of the act of 1891, as amended by the act of 1893.* If the amendment of 1897* sought to be incorporated into said statute is void, it necessarily would make no change in the original act, and that act would stand, as amended by the act of 1893, as the legislative will. The discrimination contained in the act of 1893,* and that sought to be incorporated

---

* See Ill. Laws of 1891, p. 206, as amd. by Ill. Laws of 1893, pp. 90, 91, and Ill. Laws of 1897, p. 298. See, also, Ill. Laws of 1893, pp. 182, 184, § 9; Hurd's Ill. R. S. 1899, pp. 615–618, §§ 269a–269t; Hurd's Ill. R. S. 1917, pp. 1008–1011, §§ 269a–269j; 2 J. & A. Ill. Stat. Anno. 1994–2000, §§ 3550–3559; Ill. Laws of 1907, p. 216.— [REP.

into the act of 1891, as amended in 1893, by the amendment of 1897, are of the same character, and both are obnoxious to the Fourteenth Amendment to the Constitution of the United States. The obnoxious provision in the act of 1893 carried down with it the entire act, as the court held the obnoxious provision was so intimately connected with the subject matter of the act that it could not be separated from the body of the act without destroying the entire act. Such consequence, however, does not follow the failure of the amendment of 1897. The act of 1891, as amended by the act of 1893, was a valid statute. That act, as amended, and the act of 1897, are separate and distinct acts, passed by different Legislatures, and the subsequent unconstitutional act, which is without force, can have no effect to overthrow and render void the legal and constitutional expression of the Legislature as manifested by the act of 1891, as amended in 1893."

The Court of Appeals has recognized the same rule of statutory construction as the Illinois Supreme Court. In *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8, 22, 23) the court puts the question: " Can a valid statute be annulled by a void amendment? " and then states as follows: " A section in a later act amending a section in an earlier act, ' so as to read as follows,' if followed by a blank space only, would effect no change in the law. That is the legal effect of the situation before us, so far as the question now involved is concerned. The section of 1906\* is void, at least in the respect mentioned, and a void thing is no thing. It changes nothing and does nothing. It has no power to coerce or release. It has no effect whatever. In the eye of the law it is merely a blank, the same as if the types had not reached the paper. It neither repealed nor substituted, for as it is void it could do neither. \* \* \* ' An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed ' (*Norton* v. *Shelby County*, 118 U. S. 425, 442). The main argument of the appellant is founded on the theory that the section, although void because it violates the Constitution, is valid for the purpose of substitution or repeal, whereas it is valid for no purpose whatever. \* \* \* The new section never breathed. Instead of blotting out the earlier it was blotted out itself. Instead of amending ' so as to read as follows,' it did not amend in any respect. Conceding that the two sections cannot stand together, still the earlier is the only one that ever stood at all. There was no express repeal of the act of 1905\* or

---

\* See Laws of 1906, chap. 414, § 1, amdg. Tax Law (Gen. Laws, chap. 24; Laws of 1896, chap. 908), § 315, as added by Laws of 1905, chap. 241.— [REP.

any part thereof. The two acts were enacted by different Legislatures and, therefore, it ' cannot be said that the original act would not have been passed except for the amendment.' (*Ex parte Davis*, 21 Fed. Rep. 396.)"

We have read the opinion recently handed down by Mr. Justice P<small>OOLEY</small> in *Buffalo Gravel Corporation* v. *Moore* (118 Misc. Rep. 61) in the Special Term, Erie county. We find that the learned justice did not take cognizance of the decisions which have made a distinction between an obnoxious amendment to a valid existing law and an obnoxious feature in an original law of which it is an integral part which would justify the conclusion that the Legislature would not have passed the entire act without the unconstitutional portion thereof. It being our opinion that the Donnelly Anti-Trust Act is in full force and effect regardless of the unconstitutional amendment of 1918, it inevitably follows that any attempt on the part of the defendants to interfere with the management of the plaintiff's business with respect to the prices at which it may sell its product is unlawful and in direct violation of the statutes. We may also add what was said in *Curran* v. *Galen* (152 N. Y. 37): " The social principle which justifies such organizations [referring to labor unions] is departed from, when they are so extended in their operation as either to intend, or to accomplish, injury to others."

In *Duplex Co.* v. *Deering* (254 U. S. 443, 465) the court said: " The accepted definition of a conspiracy is, a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means. (*Pettibone* v. *United States*, 148 U. S. 197, 203.) If the purpose be unlawful it may not be carried out even by means that otherwise would be legal; and although the purpose be lawful it may not be carried out by criminal or unlawful means."

The order appealed from should be affirmed, with ten dollars costs and disbursements.

C<small>LARKE</small>, P. J., D<small>OWLING</small>, S<small>MITH</small> and P<small>AGE</small>, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.